# EXHIBIT 6



August 25, 2021

Fall Line Construction, LLC
Ryan Pounds
25 W. Main Street
Butler, GA 31006
E-mail: rpounds@flcofga.com

    RE: Response to August 16, 2021 Letter From Fall Line Construction
       Engineering, Procurement and Construction Subcontract Agreement dated November 4, 2020, (the "Agreement") by and between Strata Solar, LLC ("Strata") and Fall Line Construction, LLC ("FLC")

Dear Ryan,

Please consider this Strata's formal response to your correspondence dated August 16, 2021.

The letter you provided to Strata on August 16, 2021 was disappointing to read, as it was another example of the numerous ways in which FLC has failed to perform on the Rochambeau project. Your letter highlights the ongoing pattern of FLC's refusal to address any of the issues or take responsibility for its actions, instead resorting to inflammatory and false statements of blame.

In the interest of stating facts that can be appreciated by both parties I think it is important to begin with a recap of why FLC was suspended from the project. The suspension was the result of FLC abandoning the project site without notice on the afternoon of August 3, 2021. Strata can only infer from your ongoing narrative that the decision to abandon the project was the result of personal feelings and your unwillingness to participate in a (routine, required by the Agreement and consistent with the Safety Plan) safety investigation.

On August 5, Strata declared a Subcontractor Default and suspended FLC's work for cause. This was not a decision we wanted to make or that was made in haste: this was the result of continued poor performance by FLC, and ultimately by FLC's refusal to acknowledge the safety incident or take responsibility for safe performance of Work moving forward. As we have discussed at length over the course of this project, FLC's poor quality Work has led to environmental compliance issues, including sediment releases requiring notification to state and local regulators. The issues with FLC's Work are well-documented in JCC inspection reports, Keramida SWPPP inspection reports, notifications to state and local regulators and Owner 3rd party inspection reports.

Your allegations of a "manufactured" safety incident as "retaliation" for unfounded accusations of harassment could not be further from the truth. The August 3, 2021 safety incident was documented by Strata and Owner representatives and that documentation has been shared with FLC. FLC personnel were on site, involved in and witnessed the incident. An Owner representative in fact was the person who observed the unsafe act and immediately took action to issue the stop work directive. I am sure you understand that the Safety Plan requires this and that we cannot allow an ongoing safety risk and hazard to continue for the purpose of recording video or photographs – this was an emergency situation.

800 Taylor St., Suite 200 | Durham, NC 27701 | (919) 960-6015 | www.stratacleanenergy.com
ARCH 00674

Our goal was to review the safety incident with your staff on August 4, 2021, to include a graphical representation of staff placement with FLC collaboration – but FLC refused to participate. This is industry standard procedure required by our Agreement (see Exhibit E's Safety Plan) and did not involve the need for legal counsel. In fact, Strata did not receive any objection from your counsel nor any communication from FLC from August 3-5.

You now assert that Strata's safety investigation and account is inaccurate – but review of the documents we have provided around the presences of JSAs, SOPs, rigging plans, and operator checklist is part of the investigation in which FLC refused to participate. We stand by our report and ask that you immediately provide copies of any of these documents for our review if you believe they add information relevant to the August 3 incident.

Section 24 of the Supplemental Terms and Conditions in the Safety Plan outlines procedures for Serious Violation/Infractions which were identified as being present during the safety investigation. The Owner's decision to direct removal of FLC from the Site is a direct result of this violation and FLC's refusal to acknowledge the safety risk and participate in the investigation. Unfortunately, the Owner's attempt with us to address these issues was met with an immature and unprofessional response by FLC's on-Site supervisor, who proceeded to direct FLC crews to abandon Work without securing equipment or cleaning work areas.

I agree that FLC has a standard operating procedure for means and methods of performance. However, FLC did not follow its SOP on August 3, allowing a craft worker to be under the boom of an excavator with a suspended load. (If in fact this is the way FLC previously performed Work, it is certainly not justification and indeed would be evidence of a pattern of failing to ensure safe work practices.) I want to be very clear: there are no conflicting accounts over the August 3 safety incident. While different personnel described the incident using different terminology, all recorded observations and documentation are consistent with the conclusion of a Serious Violation/Infraction. It is unconscionable to me that you would choose to argue about semantics instead of acknowledging that a risk was present in each of these iterations that could have led to serious injury or death.

Your claims of harassment or discrimination are simply untrue. The allegation raised by FLC was reported to Strata on December 8, 2020 and was immediately addressed by Strata to all parties' satisfaction. FLC never raised any other issue until your notice on August 2, 2021. Upon receipt of FLC's notice we investigated the issue and found no merit to your claim of harassment or discrimination but we did discover an incident in April 2021 where a racial slur was used by an FLC employee Rafael Aviles-Giloohy as he was being removed from the project site for possession of a weapon in the form of a knife. It is disappointing that you would make these claims with the full understanding that your own staff were in fact documented as participating in unacceptable use of discriminating language. Furthermore, possessing weapons onsite further displays a lack of control and poor judgment of the staff you placed on the project site. Strata is committed to a safe and professional working environment. We do not tolerate discrimination or harassment on any level.

Second, during our meeting July 12 in Durham, you made allegations that your staff were partying and using drugs. This was understandably alarming, and we took your comment seriously. We ordered 100% screening of the site staff to occur the week following our next random drug screening as required per the Agreement. Strata's drug screening is performed by third party testing agency Drug Testing Corporation (DTC), which selects randomized staff for testing. Strata is not involved in and cannot direct or control such selections.

Despite this, you claim this drug testing was used as harassment on July 14, 2021. I have attached to this

letter the roster of DTC-selected staff for testing along with alternates for that date. The following week DTC performed a 100% test, and during this test a member of your staff provided a sample that was not within the proper temperature ranges. DTC followed protocol to request a second sample and the employee was asked to remain offsite during the laboratory analysis of the second sample. These actions are within the parameters of the policies of DTC and are not targeted nor abusive in anyway.

Strata takes the issue of fit for duty very seriously; we followed up on your statements in a professional manor and DTC continued 100% sampling of staff through August 12, 2021. Drug screening is not harassment or discrimination. It is a necessary safety protocol to ensure a safe work environment for our employees and yours.

Although we have discussed this at length, I must again respond to your claims regarding payment, which lack context and factual basis:

FLC's invoice #5 was inaccurate and incomplete, and as such, did not constitute a valid invoice. Strata notified FLC on June 8, 2021 of its rejection of invoice #5 for claiming payment for work not performed. FLC later clarified that, although its invoice #5 failed to reflect accurate information, it in fact was seeking payment for materials stored onsite and as such was incorrectly submitted.

Invoice #5 also failed to include lien waivers from sub-tier vendors. Several sub-tier vendors to FLC contacted Strata notifying us of non-payment by FLC for work performed on the Rochambeau project – work performed for which Strata had already paid FLC (and for which FLC had represented, in its unconditional lien waivers to Strata, it had paid its sub-tiers). Prior to these sub-tier vendors contacting us, Strata was unaware they were providing work to FLC with exception of Lovin Contracting Company (and had not approved them as required under the Agreement).

As you know under the terms of the Agreement Strata is provided a 30 day cure period after your notice of non-payment before any event of default can occur. You are also aware that under the terms of the Agreement Strata can withhold payment if there is sufficient evidence that you have failed to perform under the Agreement which was the case when you did not pay your vendors.

Strata never received a 30-day notice from FLC, but instead received notice from FLC on June 29, 2021 of an alleged Default for Nonpayment. During our July 12, 2021 meeting in Durham, we discussed at length our issues and concerns around FLC's non-payment to its sub-subcontractors and requested all documentation to satisfy these outstanding payments be provided to Strata.

After FLC failed to cure its deficiencies in invoicing, on July 20, 2021 Strata formally notified FLC of our withholding of payment due to these unpaid sub-tier vendors of FLC. After FLC once again failed to provide the lien waivers, Strata was forced to provide FLC Notice of Subcontractor Default for non-payment of its sub-tiers on July 28, 2021.

Strata has to date still not received all lien waivers from FLC's sub-tiers. Strata proposed issuing joint checks to unpaid sub-tiers. We were contacted by another of FLC's sub-tier vendors, Fortiline, who represented that it was owed funds in excess of the full amount of FLC's invoice #5 (and that it remained unpaid for prior work performed). We provided FLC with numerous opportunities to confirm the amounts owed to Fortiline but FLC refused to respond except to argue and blame Strata for FLC's problems. Ultimately, after your counsel was able to confirm the amount owed to Fortiline, we promptly paid Fortiline on FLC's behalf using the amounts FLC claimed in invoice #5. There is no pending remaining unpaid FLC invoice, and the only issues created here were entirely the result of FLC's inability to follow the terms of the Agreement.

(You also introduce statements about payment on another project, Sycamore Creek, pursuant to a different agreement. The circumstances of the other project with regard to lien waivers and sub-tier vendors are nearly identical, and Strata has provided FLC a path to payment to which you have failed to respond. Strata will address this with you in separate correspondence.)

As you are aware, the Owner's directive removing FLC from Site is final. While I understand FLC has begun demobilization efforts, you have failed to communicate any plan for demobilization. By this letter I request you provide one, and outline expectations for FLC staff who report to Site:

1. Staff are expected to provide Strata's site leadership with a 24-hour notice prior to arrival onsite. This includes a forecast of activities to be performed onsite and outlining areas of access and any assistance needed from Strata.
2. Staff are expected to be escorted at all times and are not permitted access to materials or work areas of the project.
3. Rico Harris and Ben Norton are not permitted onsite as a result of his involvement in the serious safety violations and unprofessional communication with Owner's personnel.

Finally, I must correct other misstatements in your letter:

The Work on Site is not suspended. As you are aware, on July 23, Strata requested a collaborative planning session with FLC to align on FLC's plan for performance of Work. During that meeting Strata and FLC outlined a work plan to complete the project and Strata provided correspondence confirming that James City County (JCC) had approved work to proceed for basins 9-12. From July 23, 2021 until FLC's abandonment of the Work on August 3, 2021, FLC chose not to perform any basin work. On July 29, we provided FLC additional correspondence from JCC confirming that the entire Site was approved to proceed with Work. This approval remains in good standing and it simply is not true that FLC was not authorized to perform Work.

You also contend FLC has been asked to perform indefinite site maintenance beyond the scope of its Work. FLC did not notify Strata of this claim prior to performing this alleged extra Work and did not seek a Change Order under the terms of our Agreement prior to incurring expenses for this alleged extra Work, and for that reason alone, FLC waived its right to claim a Change Order. We first received FLC's request for a Change Order following FLC's abandonment of the Work. Because the Agreement requires FLC to continue to perform maintenance until Notice of Termination of the Land Disturbance Permit issued by JCC, I disagree that this site maintenance Work was beyond FLC's scope: FLC's obligations did not change, nor were they impacted by external factors.

I hope this clarifies Strata's position. I regret that we have reached this point but must note that your statements do not accurately reflect our discussions (and seem to be aimed more toward posturing in a dispute than anything else).

Thank you,

Sam Sink
VP of Project Management
Strata Solar, LLC