# EXHIBIT 12



# ENGINEERING, PROCUREMENT AND CONSTRUCTION SUBCONTRACT AGREEMENT

## ROCHAMBEAU SOLAR PROJECT

## CIVIL CONSTRUCTION

Subcontract No.:  21.17.681.043

Effective Date:   October 11, 2021

Subcontractor:    Tindol Construction

STRATA-0089077

21.17.681.043                          Civil Construction                          11-Oct-2021

## <u>TABLE OF CONTENTS</u>

| | | |
|---|---|---|
| 1. | DEFINITIONS | 1 |
| 2. | GENERAL PROVISIONS | 5 |
| 3. | SCOPE OF WORK | 5 |
| 4. | MECHANICAL COMPLETION; SUBSTANTIAL COMPLETION; FINAL COMPLETION | 7 |
| 5. | PAYMENT & LIEN WAIVERS | 8 |
| 6. | SCHEDULE | 10 |
| 7. | CHANGES | 11 |
| 8. | FORCE MAJEURE EVENTS; EVENTS OF DELAY | 12 |
| 9. | REPRESENTATIONS | 13 |
| 10. | LAWS; PROJECT AND SITE RULES | 14 |
| 11. | ENVIRONMENTAL, HEALTH AND SAFETY | 15 |
| 12. | HAZARDOUS MATERIALS | 17 |
| 13. | SUBCONTRACTOR PERSONNEL | 17 |
| 14. | WARRANTY | 18 |
| 15. | INDEMNITY | 18 |
| 16. | INSURANCE | 19 |
| 17. | TERMINATION & SUSPENSION | 19 |
| 18. | TRANSFER OF TITLE; RISK OF LOSS | 21 |
| 19. | LIENS | 21 |
| 20. | INDEPENDENT CONTRACTOR | 21 |
| 21. | APPLICABLE LAW | 21 |
| 22. | CONSEQUENTIAL DAMAGES | 22 |
| 23. | TITLE TO DOCUMENTATION; INTELLECTUAL PROPERTY | 22 |
| 24. | CONFIDENTIALITY | 23 |
| 25. | PROJECT DOCUMENTATION | 24 |
| 26. | AUDIT | 24 |
| 27. | DISPUTES | 25 |
| 28. | NOTICES | 26 |
| 29. | CONFLICT OF INTEREST | 26 |
| 30. | MISCELLANEOUS | 26 |
| 31. | ENTIRE AGREEMENT | 27 |

STRATA-0089078

DocuSign Envelope ID: 96BE0F33-86DD-4AA4-840B-D256582147B4
21.17.681.043                         Civil Construction                         11-Oct-2021

**LIST OF EXHIBITS**

Exhibit A          Scope of Work
    Exhibit A-1          Drawings and Specifications
    Exhibit A-2          Reserved
    Exhibit A-3          Specified Materials
    Exhibit A-4          Subcontractor Key Personnel
    Exhibit A-5          Codes & Standards
    Exhibit A-6          Reserved
Exhibit B          Project & Payment Schedules
    Exhibit B-1          Project Schedule
    Exhibit B-2          Schedule of Values
Exhibit C          Site Information
    Exhibit C-1          Reserved
    Exhibit C-2          Geotechnical Report
Exhibit D          Subcontractors Quality Assurance Program
Exhibit E          Health & Environmental Safety Plan
    Exhibit E-1          Contractor's Safety Plan
    Exhibit E-2          Owner's Safety and Environmental Requirements
    Exhibit E-3          Incident Reporting
Exhibit F          Insurance Requirements
Exhibit G          Contractor Forms
    Exhibit G-1          Form of Subcontractor Invoice
    Exhibit G-2          Form of Submittal/Standard RFI
    Exhibit G-3          Form of Daily Report
    Exhibit G-4          Form of Weekly Report
    Exhibit G-5          Form of Monthly Report
    Exhibit G-6          Form of Change Order Request
Exhibit H          Lien Waivers
    Exhibit H-1          Partial Lien Waiver
    Exhibit H-2          Final Lien Waiver
Exhibit I          Contractor Policies
    Exhibit I-1          Reserved
    Exhibit I-2          Reserved
    Exhibit I-3          Approved Sub-Subcontractors
    Exhibit I-4          Reserved
    Exhibit I-5          Repair Replacement Costs
Exhibit J          Milestone Certificate Forms
    Exhibit J-1          Mechanical Completion Certificate
    Exhibit J-2          Substantial Completion Certificate

STRATA-0089079

DocuSign Envelope ID: 96BF0F33-96DD-4AA4-840D-D256582147B4

Exhibit J-3          Final Completion Certificate

Exhibit K          Subcontractor Requirements & Reporting

Exhibit L          Reserved

Exhibit M          Intellectual Property Licenses

Exhibit N          Owner Flowdown Requirements

Exhibit O          Subcontractor Work Package

STRATA-0089080

# ENGINEERING, PROCUREMENT, AND CONSTRUCTION SUBCONTRACT AGREEMENT

This Engineering, Procurement, and Construction Subcontract Agreement (the "Agreement") is made and entered into by and between Strata Solar, LLC, a North Carolina limited liability company with its principal place of business at 800 Taylor Street, Suite 200, Durham, NC 27701 ("Contractor"), and Patriot Dozer Services, LLC, dba Tindol Construction,, a Texas limited liability company, with its principal place of business at 600 Fisk Ave., Brownwood, TX 76801 ("Subcontractor"). Contractor and Subcontractor are sometimes hereinafter referred to separately as a "Party" or together as the "Parties." The effective date of this Agreement shall be October 11, 2021 (the "Effective Date").

## RECITALS

**WHEREAS,** Virginia Electric and Power Company, doing business as Dominion Energy Virginia ("Owner") is developing a new 28 MW (dc) solar power plant (the "Facility") to be constructed in Williamsburg, Virginia (the "Site"), and together with the Facility, the "Project");

**WHEREAS,** Owner has entered into, or will enter into, an engineering, procurement, and construction agreement with Contractor (the "Prime Contract"), pursuant to which Contractor will design, engineer, procure, construct, test, and commission the Facility;

**WHEREAS,** Subcontractor is engaged in the business of providing certain services related to construction as set forth in this Agreement;

**WHEREAS,** Contractor requires such services for use in the design, engineering, procurement, construction, commissioning and testing of the Facility, and Subcontractor desires to provide such services, in accordance with the terms set forth in this Agreement;

**THEREFORE,** in consideration of the recitals, the mutual promises herein and other good and valuable consideration, the receipt and sufficiency of which the Parties acknowledge, the Parties agree as follows:

## 1. DEFINITIONS

1.1. "**Affiliate**" shall mean, with respect to any Person, any other Person that, directly or indirectly, through one or more intermediaries, Controls, is Controlled by, or is under common Control with such first Person at such time, where "Control" shall mean (a) the possession, directly or indirectly, of the power to direct or cause the direction of management and policies of a Person, whether through the ownership of voting securities, as a trustee or executor, by contract or credit arrangement, or otherwise, or (b) the ownership, directly or indirectly, of fifty percent (50%) or more of the equity interest in a Person.

1.2. "**Agreement**" shall have the meaning set forth in the preamble and shall include all Exhibits hereto.

1.3. "**As-Built Drawings**" means all drawings reflecting the status of Work as completed by Subcontractor at the Site.

1.4. "**Business Day**" shall mean every day other than a Saturday, Sunday or a legal holiday recognized by the State of North Carolina.

1.5. "**Change in Law**" means any binding, written change after the Effective Date in the judicial or administrative interpretation of, or adoption after the Effective Date of, any Law, which is inconsistent or at variance with any Law in effect on the Effective Date; provided, however, a Change in Law shall not include any change or adoption of any Law with respect to (a) Taxes assessed on income, profits, revenues or gross receipts, (b) Taxes that vary the compensation, benefits, or amounts to be paid to or on behalf or on account of employees or (c) organization, existence, good standing, qualification, or licensing in any jurisdiction. For the avoidance of doubt, a "Change in Law" shall not include any change or adoption of a Law that occurs prior to the Effective Date but, by its terms, does not come into effect until after the Effective Date.

1.6. "**Change Order**" shall have the meaning set forth in Section 7.1.

1.7. "**Confidential Information**" shall mean, with respect to any Party, all written, verbal, electronic and other information that such Party provides or makes available to the other Party relating in any way to this Agreement which are marked as being "Proprietary" to such Party at the time of disclosure, or for verbal information reduced to a writing and marked or designated as being "Proprietary" to such Party within seven (7) Days after such verbal disclosure. Confidential Information of Owner shall specifically include (a) Documentation and (b) business plans and methods, customer information, engineering, operating and technical data, and all non-public

STRATA-0089081

data specific to a customer or group of customers of Owner or its Affiliates ("Customer"), including electricity or natural gas consumption, load profile, billing history or credit history that is or has been obtained or compiled by Owner or its Affiliates in connection with supplying electric services or gas services to that Customer or group of Customers. "Confidential Information" shall not include any information that: (i) was already known to the receiving Party at the time it was disclosed by the disclosing Party; (ii) was available to the public at the time it was disclosed by the disclosing Party; (iii) becomes available to the public after being disclosed by the disclosing Party through no wrongful act of, or breach of this Agreement by, the receiving Party; (iv) is received by the receiving Party without restriction as to use or disclosure from a third party; or (v) is independently developed by the receiving Party without the benefit of any Confidential Information of the disclosing Party. For the avoidance of doubt, Documentation shall not be deemed to be, or have been, Confidential Information of Subcontractor.

1.8.   "**Contract Documents**" shall have the meaning set forth in Section 3.1.

1.9.   "**Contractor**" shall have the meaning set forth in the Preamble shall include respective successors and permitted assigns.

1.10.   "**Contractor-Directed Change in Work**" shall have the meaning set forth in Section 7.5.

1.11.   "**Day**" shall mean a calendar day, including Saturdays, Sundays and holidays.

1.12.   "**Documentation**" shall mean all materials in printed or electronic format that are or are to be delivered hereunder by Subcontractor to Contractor, or by Contractor to Owner in respect of the Work, including without limitation, specifications (including those in the Scope of Work), schedules (including the Subcontract Schedule and the Project Schedule), schematics, drawings (including As-Built Drawings), blueprints, memoranda, letters, notes, isometrics, computer programs and software, flow charts, logic diagrams, graphs, studies, system descriptions, lists, charts, diagrams, standards, criteria, assumptions, measurements, procedures, instructions, reports, test data and results, analyses, calculations, formulas, computations, plans, empirical and other correlations, models, manuals and training materials, or are otherwise created by Subcontractor and are necessary or prudent for the operation, maintenance, modification or decommissioning of the Project in accordance with Prudent Industry Practices.

1.13.   "**Environmental Law**" shall mean, collectively, any Laws, as well as case law, judgments, orders, consent orders or decrees concerning the environment or the health or safety of human beings, including (a) any law or regulation relating to the extraction and/or disposition of any natural resources (including oil, gas and other minerals) in the environment; (b) any law or regulation relating to occupational health and safety; (c) any law or regulation relating to hazardous materials or environmentally hazardous chemicals; (d) any law or regulation relating to dangerous goods; (e) any law or regulation relating to contamination of any aspect of the environment; and (f) any standards followed by industry generally which meet community expectations, including, as amended, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9601 et seq.; the Resource Conservation and Recovery Act, 42 U.S.C. §6901 et seq.; the Federal Water Pollution Control Act, 33 U.S. C. §1251 et seq.; the Clean Air Act, 42 U.S.C. §7401 et seq.; the Hazardous Materials Transport Act, 49 U.S.C. §1471 et seq.; the Toxic Substances Control Act, 15 U.S.C. §§2601 through 2629; the Oil Pollution Act, 33 U.S.C. §2701 et seq.; the Environmental Planning and Community Right-To-Know Act, 42 U.S.C. §11001 et seq.; the Occupational Safety and Health Act of 1970; and the Safe Drinking Water Act, 42 U.S.C. §§300f through 300j; and any of the regulations adopted, published, or promulgated pursuant to said laws, or any other laws, regulations and rulings of any Government Authority having jurisdiction over such materials in the State of Virginia, including the Environmental Protection Agency.

1.14.   "**Equipment**" shall mean any and all materials, structures, buildings, apparatus, equipment, spare parts, hardware, goods, modifications and other tangible personal property, all as intended to become a permanent part of the Project, that Subcontractor furnishes, or is required to furnish, hereunder in accordance with this Agreement, including the specifications in the Scope of Work, or otherwise for the Project. "Equipment" includes all of the foregoing items that Subcontractor furnishes through a Sub-subcontractor.

1.15.   "**Final Completion**" shall have the meaning set forth in Section 4.4.

1.16.   "**Final Completion Date**" shall mean the date Subcontractor has completed all requirements for achievement of Final Completion, as set forth in Section 4.4.

1.17.   "**Force Majeure Event**" shall have the meaning set forth in Section 8.1.

1.18.   "**Government Authority**" shall mean any federal, state, county, city, local, municipal, foreign or other government or quasi-governmental authority (including any self-regulatory organization or independent system operator or regional transmission operator) or any department, agency, subdivision, court or other tribunal of any of the foregoing.

1.19.   "**Government Approvals**" shall mean all permits, licenses, authorizations, consents, decrees, waivers, privileges and approvals from, and filings with, any Government Authority required for or material to the performance of the Work or the development,

STRATA-0089082

financing, ownership, operation or maintenance of the Facility in accordance with this Agreement, including work permits, environmental permits, licenses and construction permits.

1.20.  "**Guaranteed Mechanical Completion Date**" shall mean the date specified for Guaranteed Mechanical Completion set forth in the Project Schedule, as such date may be adjusted in accordance with the terms of this Agreement.

1.21.  "**Guaranteed Substantial Completion Date**" shall mean the date specified for Guaranteed Substantial Completion set forth in the Project Schedule, as such date may be adjusted in accordance with the terms of this Agreement.

1.22.  "**Guaranteed Dates**" shall mean each Guaranteed Mechanical Completion Date and the Guaranteed Substantial Completion date, as such date(s) may be adjusted in accordance with the terms of this Agreement.

1.23.  "**Hazardous Materials**" shall mean substances defined as "hazardous substances" pursuant to Section 101(14) Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986 (42 U.S.C. Sections 9601 et seq.); those substances defined as "hazardous waste" pursuant to Section 1004(5) of the Resource, Conservation and Recovery Act (42 U.S.C. Section 6901 et seq.); those substances designated as a "hazardous substance" pursuant to Section 311 (b )(2)(A) or as a "toxic pollutant" pursuant to Section 307(a)(1) of the Clean Water Act (33 U.S.C. Sections 1251 et seq.); those substances defined as "hazardous materials" pursuant to Section 103 of the Hazardous Materials Transportation Act  (49) U.S.C. Sections 1801 et seq.); those substances regulated as a "chemical substance or mixture" or as an "imminently hazardous chemical substance or mixture" pursuant to Section 6 or 7 of the Toxic Substances Control Act (15 U.S.C. Sections 2601 et seq.); those substances defined as "contaminants" pursuant to Section 1401 of the Safe Drinking Water Act (42 U.S.C. Sections 300f et seq.), if present in excess of permissible levels; those substances regulated pursuant to the Oil Pollution Act of 1990 (33 U.S.C. Sections 2701 et seq.); those substances defined as a "pesticide" pursuant to Section 2(u) of the Federal Insecticide, Fungicide, and Rodenticide Act as  amended by  the Federal Environmental Pesticide Control Act of 1972 and by the Federal Pesticide Act of 1978 (7 U.S.C. Sections 136 et seq.); those substances defined as "toxic materials" or "harmful physical agents" pursuant to Section 6 of the Occupational Safety and Health Act (29 U.S.C. Section 651 et seq.); those substances defined as "hazardous air pollutants" pursuant to Section 112(a)(6), or "regulated substance" pursuant to Section 112(a)(2)(B) of the Clean Air Act (42 U.S.C. Sections 7401 et seq.); those substances defined as "extremely hazardous substances" pursuant to Section 302(a)(2) of the Emergency Planning & Community Right-to-Know Act of 1986 (42 U.S.C. Sections 11001 et seq.); and those other hazardous substances, hazardous wastes, toxic pollutants, hazardous materials, chemical substances or mixtures, imminently hazardous chemical substances or mixtures, contaminants, pesticides, by-product materials, toxic materials, harmful physical agents, air pollutants, regulated substances, or extremely hazardous substances defined in any regulations promulgated pursuant to any of the foregoing Environmental Laws, and all other contaminants, toxins, pollutants, hazardous substances, substances, materials and contaminants, polluted, toxic and hazardous materials, the use, disposition, possession or control of which is regulated by one or more Laws.

1.24.  "**Intellectual Property**" or "**IP**" means all ideas, innovations, inventions, creations, discoveries, know-how, developments, concepts, designs and technological improvements (whether or not patentable) and all computer programs and code, literary works, publications, drawings, designs, specification, technological improvements or other works (whether or not copyrightable).

1.25.  "**Law(s)**" shall mean, at any date of determination, any federal, state, local, foreign or other law, statute, code, ordinance, permit, license, regulation, rule, standard, regulatory or administrative guidance, order, constitution, treaty, principle of common law or other restriction of any Government Authority, including the state, or any Government Approvals, in effect on such date.

1.26.  "**Liability**" shall mean any loss, claim, demand, order, damage, penalty, fine, cost, settlement payment, liability (whether asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due), tax, encumbrance, diminution of value, expense, fee (including attorneys' and other professionals' fees) and court costs, of any kind or nature, including for any bodily injury, sickness, disease, or death, or damage to property.

1.27.  "**Lien**" shall mean any claim, lien, mechanic's lien, materialmen's lien, stop work notice, encumbrance or other entitlement, asserted against the Contractor or Owner, the Site, Facility, Project, or any portion thereof, for amounts owed relating to Work performed pursuant to this Agreement.

1.28.  "**Lien Waiver**" shall mean a document waiving and releasing Liens as set forth in substantially the form provided in Exhibit H, and which shall be submitted with each Subcontractor Invoice.

1.29.  "**Mechanical Completion**" shall have the meaning set forth in Section 4.2.

1.30.  "**Milestone**" shall mean the portion of the Work identified in the Scope of Work and corresponding with the Payment Milestone Schedule**.**

STRATA-0089083

DocuSign Envelope ID: 96BE0E33-96DD-4A44-8409-D256582147B4
Case 1:22-cv-00106-MSD-DEM  Document 67-12  Filed 09/22/23  Page 9 of 33 PageID# 4421

1.31.  **"Owner"** shall have the meaning set forth in the Recitals.

1.32.  **"Payment Milestone Schedule"** shall mean the schedule of Milestones and correlating payments of the Subcontract Price, as more particularly described in the Scope of Work.

1.33.  **"Person"** shall mean any individual, company, corporation, partnership, joint venture, association, joint stock company, limited liability company, trust, estate, unincorporated organization, Government Authority or other entity having legal capacity.

1.34.  **"Prime Contract"** shall mean and refer to the agreement between Owner and Contractor for the Project.

1.35.  **"Project"** shall mean the Facility and the Site, together, to which Subcontractor provides the Services.

1.36. **"Project Schedule"** shall mean the schedule for Subcontractor's performance of the Work as set forth in Exhibit B-1.

1.37.  **"Prudent Industry Practice"** shall mean industry engineering practices and construction in a good and workmanlike manner, in accordance with all applicable laws and the approved Contract Documents (including but not limited to the codes and standards set forth in Exhibit A-5), and those practices, methods, equipment, specifications and standards of safety, performance, dependability, efficiency, and economy, as the same may change from time to time, as are consistent with the industry standard level of care and skill of other fully competent, qualified engineering, accepted by highly experienced firms in the construction (including design, engineering, manufacturing, delivery, construction management, testing and commissioning), operation and maintenance (including training in the operation and maintenance) of electric power generation facilities of sophistication similar to the Project for similar clients, which in the exercise of reasonable judgment and in light of the facts known at the time the decision was made, after due and diligent inquiry, are considered good, safe, customary and prudent practices, and as are in accordance with standards of professional care, skill, diligence, and competence generally accepted by highly experienced firms and applicable to the construction (including design, engineering, manufacturing, delivery, construction management, testing and commissioning), operation and maintenance (including training in the operation and maintenance) practices in the United States for electric power generation facilities similar to the Project.

1.38.  **"Sales Taxes"** shall mean all sales or sales and use Taxes imposed by the Commonwealth of Virginia relating to the Equipment and/or Subcontractor's Work.

1.39.  **"Schedule"** or **"Schedules"** shall mean the Project Schedule and/or the Subcontract Schedule, as applicable.

1.40.  **"Site"** shall mean the Facility site, as more particularly described Exhibit C.

1.41.  **"Site Conditions"** shall have the meaning set forth in Section 9.2.

1.42.  **"Subcontractor"** shall have the meaning set forth in the Preamble.

1.43.  **"Subcontractor Person(s)"** shall mean and refer to Subcontractor, any Affiliate of Subcontractor, any of their respective agents, successors, assigns, officers, directors, members, shareholders, partners, employees, consultants, independent contractors, and any other Person over whom any of the foregoing Persons has control, responsibility or authority, including but not limited to sub-subcontractors and suppliers of any tier. Subcontractor Persons are sometimes collectively referred to as "Subcontractor Group."

1.44.  **"Subcontract Price"** shall mean the full compensation accepted by Subcontractor for the performance of the Work, as more particularly described in Scope of Work, and as may be adjusted only in accordance with the provisions and limitations set forth in this Agreement.

1.45.  **"Subcontract Schedule"** shall have the meaning set forth in Section 6.3.

1.46.  **"Substantial Completion"** shall have the meaning set forth in Section 4.3.

1.47.  **"Taxes"** means all taxes, assessments, customs, charges, tariffs, duties, fees, levies or other charges imposed by any Governmental Authority effective or enacted as of the Effective Date. For the avoidance of doubt, Taxes include Sales Taxes.

1.48.  **"Work"** means the entire scope, or any part thereof, of labor, materials, services, equipment, and other things provided for the Project by Subcontractor pursuant to this Agreement. "Work" includes, but is not limited to, the Scope of Work set forth in the Scope of Work and other Contract Documents.

STRATA-0089084

## 2.  GENERAL PROVISIONS

   2.1.   Intent of Contract Documents. Prior to the execution of this Agreement, Subcontractor performed cost estimating and related services and developed, provided or verified all of the information that forms the Scope of Work (including the specifications contained therein), including technical limits and parameters of the Project as same relates to Subcontractor's Scope of Work, for the purpose of determining that such information is adequate and sufficiently complete for Subcontractor to perform its Work on the Project for the Subcontract Price, within the required times set forth in the Subcontract Schedule and the Project Schedule, and in accordance with all requirements of this Agreement, including Prudent Industry Practices and applicable Law. Accordingly, Subcontractor (a) hereby agrees that it shall have no right to claim or seek an increase in the Subcontract Price or an adjustment to the Subcontract Schedule or the Project Schedule with respect to any incomplete, inaccurate or inadequate information that may be contained or referenced in the Scope of Work, (b) hereby waives and releases Contractor from and against any such claims, and (c) shall not be relieved of its responsibility to achieve all requirements under this Agreement due to any such incomplete, inaccurate or inadequate information.

   2.2.   Order of Precedence. It is the intent of the Parties that each of the specifications and obligations required to be performed by Subcontractor under this Agreement (including the Exhibits) is an independent specification or obligation and that Subcontractor shall be required to perform all such obligations regardless of any apparent conflict. All of the provisions of this Agreement (including the Exhibits) shall be considered complementary, and the Parties shall attempt to give effect to all provisions. The failure to list a requirement specifically in one document, once that requirement is specifically listed in another, shall not imply the inapplicability of that requirement. Subcontractor represents that it has reviewed this Agreement (including the Exhibits) and that it is able to perform all of its obligations. Subject to the foregoing, if Subcontractor subsequently determines that it is unable to perform all of its obligations under this Agreement due to an insurmountable conflict, Subcontractor shall be responsible for proposing and implementing a solution to the satisfaction of Contractor.  If there is an express conflict between this Agreement (excluding the Exhibits) and the Exhibits, this Agreement (excluding the Exhibits) shall control and the conflicting provisions shall be interpreted so as to accord with the provisions of this Agreement (excluding the Exhibits). Later dated amendments or Change Orders shall take precedence over earlier dated amendments or Change Orders. In the event of any conflict between this Agreement, applicable Law and Prudent Industry Practices, all applicable Laws shall control over the terms of this Agreement and Prudent Industry Practices, and the terms of this Agreement shall control over Prudent Industry Practices.

## 3.  SCOPE OF WORK

   3.1.   General. Subcontractor agrees to provide the services and materials described in Exhibit A (the "Scope of Work") consistent with this Agreement. This Agreement, including the Exhibits hereto and the documents and materials referenced therein (all of which are incorporated herein) (together, the "Contract Documents") shall be taken as mutually explanatory. Subcontractor acknowledges and agrees to perform the Work in accordance with Prudent Industry Practices.

   3.2.   Performance of Work. Subcontractor shall diligently, duly and properly perform and complete the Work and its other obligations under this Agreement consistent with and ensure that all Work shall conform to all Prudent Industry Practices, all applicable Law, all requirements of this Agreement (including all Exhibits) and the approved Contract Documents. Subcontractor shall be responsible, at its own cost, for any re-Work and for all construction means, methods, techniques, sequences, procedures, safety and quality assurance, and quality control programs in connection with the performance of the Work; provided, however, Subcontractor is not responsible for cost of re-Work if caused such re-Work is caused by others, e.g., other subcontractors, contractor, Owner. In the event Contractor identifies any defective or nonconforming Work, Subcontractor shall, at its sole cost and expense (as appropriate and subject to Contractor's approval), reperform, repair, or replace the defective or nonconforming Work at Subcontractor's cost. Subcontractor shall also repair or replace any property, work, or portion of the Project damaged by the defective or nonconforming Work, at Subcontractor's cost.

   3.3.   Sub-Subcontractors; Third Party Site Access. Absent Contractor's prior written approval, which shall not be unreasonably withheld, Subcontractor shall not engage any sub-subcontractor, supplier, or vendor to perform or supply any portion of the Work. Subcontractor shall be solely responsible at all times for the acts and omissions of, and performance of the Work by, all Subcontractor Persons. Subcontractor shall, by written notice to Contractor and prior to any Subcontractor Person accessing the Site, provide identifying individual and entity information for all Subcontractor Persons requiring access to the Site. Subcontractor acknowledges the procedures set forth in this Section 3.3 are intended to secure the safety and security of the Site and all personnel on the Site, and that failure of Subcontractor to follow these procedures may result in Contractor's refusal of Site access, the impacts of which shall be at Subcontractor's sole cost and expense.

   3.4.   Government Approvals. Subcontractor shall obtain, maintain, and pay for all Government Approvals required to perform the Work. Subcontractor shall, at Subcontractor's sole cost and expense, provide all testing, inspections, and evaluations required by the applicable Government Authority in order to obtain and maintain the Government Approvals. Subcontractor shall make available copies of all Government Approvals to Contractor and shall post Government Approvals at the Site where required by applicable Laws or upon request by Contractor.

STRATA-0089085

3.5.  Equipment. Subcontractor shall install the Equipment included in Subcontractor's Work pursuant to this Agreement, including all equipment not specifically described in the Scope of Work which is customary or necessary to meet the requirements of the Scope of Work. All Equipment shall successfully operate and function in the manner represented by Subcontractor in accordance with its intended and express purpose and shall be new and of first class quality. Any Equipment for which neither this Agreement nor Contractor provides specifications shall be of high quality and suitable for the purpose for which it will be used in the operation of the Facility. All Equipment shall be subject to such tests as Contractor may reasonably require, including any place of a sub-subcontractor or an independent third party. Contractor shall at all reasonable times have access to the Site and, upon written request, Contractor shall have reasonable access to all workshops and places where Equipment is being manufactured, fabricated, prepared or stored that are within the control of Subcontractor, and Subcontractor shall undertake reasonable efforts to provide Contractor with reasonable access to all workshops and places where Equipment is being manufactured, fabricated, prepared or stored that are not within Subcontractor's control. Subcontractor shall provide Contractor reasonable opportunity to be present for any tests of any Equipment, including any place of a Subcontractor or an independent third party. Subcontractor shall provide such assistance, labor, electricity, fuels, stores, apparatus and instruments as are reasonably required for examining, measuring and testing any Equipment in accordance with the Scope of Work before incorporation into the Project. Subcontractor shall arrange and pay for handling of all Contractor Supplied Equipment and construction equipment, including unloading, receiving, staging, and protection in accordance with Exhibit I-1 (Contractor Receiving Policy).

3.6.  Current Records and As-Built Drawings. Subcontractor shall maintain in good order at the Site, and at all times give Contractor access to, a copy of each of the "approved for construction" working specifications and drawings (including any available As-Built Drawings) applicable to Subcontractor's Work, marked currently to record all changes and modifications made during construction. Anything mentioned in the specifications and not shown on the drawings or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. The drawings shall reflect exact and actual "as-built" conditions of construction, installation, and erection as it progresses. Where drawings are not adequate to show "as-built" conditions, Subcontractor shall prepare sketches which delineate the necessary "as-built" information. At or prior to completion of its Work, Subcontractor shall have delivered to Contractor one set of reproducible As-Built Drawings for Subcontractor's Work in native format and turned over to Contractor all specifications and drawings maintained by Subcontractor.

3.7.  Quality Assurance Program. Within ten (10) Business Days after the Effective Date, Subcontractor shall provide to Contractor its quality assurance and quality control program consistent and compliant with Subcontractors Quality Assurance Program Requirements (Exhibit D). Subcontractor shall establish, implement and maintain its appropriate quality assurance and control program consistent with all requirements of Exhibit D and this Agreement with respect to Subcontractor's Work. Subcontractor shall provide Contractor and its employees, agents, representatives and invitees with unrestricted access to the Work wherever located for observation and inspection, including but not limited to auditing of all activities for conformance with the requirements of its quality assurance and control program and Exhibit D.

3.8.  Site Operations Controls; Interference with Traffic. Subcontractor shall carry out the Work so as not to interfere unnecessarily or improperly with (a) Contractor's and/or Owner's operations at or in the vicinity of the Site or (b) access to, use of or occupation of public or private roads, footpaths or properties in the possession of Owner or any other Person. Subcontractor shall communicate with, and ascertain the requirements of, all Government Authorities in relation to vehicular access to and egress from the Site and shall comply with any such requirements. Subcontractor shall be deemed to have satisfied itself as to, and shall be fully responsible for, the routing for delivery of heavy or large loads to the Site so as to satisfy any requirements of Government Authorities with respect thereto. Subcontractor shall confine operations at the Site to areas permitted by applicable Laws and shall not unreasonably encumber the site with materials or equipment. The Subcontractor shall not interrupt utility service to neighboring properties, unless neighboring property owners have been given proper notification. The Subcontractor shall not encroach upon neighboring property for storage of materials or any other reason, nor shall any of the Subcontractor's employees be permitted on said properties without written permission of the neighboring property owners. The Subcontractor shall use best practices in scheduling, coordination, signage and signals as to limit impact of construction to neighboring properties, and shall endeavor when reasonably possible to perform all Work during normal business hours.

3.9.  Materials and Tools. Excepting only the Contractor-Supplied Materials, Subcontractor shall provide and pay for all labor and incorporated materials, *including without limitation*, installed and consumable materials equipment and other items required for performance of the Work, and such tools, scaffolds, hoisting, staging, testing devices and services, and each and every item of expense and all other expenses necessary to complete performance the Work. Contractor shall not provide tools to Subcontractor.

3.10.  Contractor-Supplied Materials. Contractor will supply only the materials and equipment set forth in Exhibit A-2 (the "Contractor-Supplied Materials"). Subcontractor acknowledges it has reviewed and approved the Contractor-Supplied Materials as sufficient for the Work, and that any additional materials required to complete performance of the Work shall be at Subcontractor's sole cost and expense. Subcontractor will be responsible for receiving Contractor-Supplied Materials at the Site following the Contractor Receiving Policies as indicated in Exhibit I-1. Subcontractor will maintain an inventory of all materials and equipment, including but not limited to all Contractor-Supplied Materials received at the Site. Upon receipt by Subcontractor of Contractor-Supplied Materials

DocuSign Envelope ID: 96B50533-06DD-4AA4-8409-D256582147B4
Case 1:22-cv-00405-MSD-DEM   Document 67-12   Filed 09/22/23   Page 12 of 33 PageID# 4424

21.17.681.043                                      Civil Construction                                      11-Oct-2021

and equipment at the Site, Subcontractor assumes risk of loss, care, custody and control for the Contractor-Supplied Materials, and Subcontractor shall replace any damaged or lost Contractor-Supplied Materials at its sole cost and expense.

3.11. Subcontractor-Supplied Materials. Prior to placing orders for the Subcontractor-Supplied Materials and Equipment listed in Exhibit A-3 (the "Specified Materials"), Subcontractor shall obtain Contractor's prior written approval, which shall not be unreasonably withheld. Contractor shall review and approve or reject (including the basis for rejection) within five (5) Business Days from receipt of Subcontractor's request.

3.12. Special Subcontracting Requirements. Subcontractor shall comply, and shall ensure its sub-subcontractors and vendors comply, with the Dominion Energy Supplier Diversity Requirements set forth in Exhibit K, including but not limited to Subcontractor's obligation to provide to Contractor, upon request, completed forms set forth in Exhibit K as Attachment A, Attachment B, and Attachment C.

3.13. Utilization of Virginia-Based Entities. Subcontractor shall use commercially reasonable efforts to maximize the use of Virginia-based entities in its performance of the Work, including hiring of Virginia residents. Contractor and Subcontractor contemplate there may be opportunities for the use of Virginia-based entities and/or residents for the following non-exhaustive items of Work: temporary trailers, skilled labor, construction facilities, geotechnical services, environmental services, site security, landscaping, and purchase orders for materials and equipment (particularly bulk materials like gravel, civil engineering materials, lighting, concrete). To achieve these goals, Subcontractor shall provide to Contractor, no later than ten (10) Days after the achievement of Substantial Completion and as a condition precedent to Final Completion, a breakdown listing and identifying the following: (i) total headcount of Virginia residents employed as direct hires by Subcontractor and any sub-subcontractors or vendors; and (ii) a list of Virginia-based entities utilized on the Project for goods and/or services and an estimate of total costs allocated to the entire group of such entities.

3.14. Reserved.

## 4. MECHANICAL COMPLETION; SUBSTANTIAL COMPLETION; FINAL COMPLETION

4.1. Mechanical Completion. "Mechanical Completion" means:

4.1.1. Subcontractor has satisfied all of the requirements for Mechanical Completion set forth in the Scope of Work, including the provision of all deliverables to Contractor and the provision of at least three (3) Days' advance written notice to Contractor of the anticipated Mechanical Completion Date; and

4.1.2. Subcontractor has provided Contractor a list of recommended spare parts to be maintained for each item of operating Equipment and their installation and removal;

4.1.3. and

4.1.4. Subcontractor has provided written notice to Contractor, in substantially the form of the Mechanical Completion Certificate, of Subcontractor's completion of all conditions precedent to Mechanical Completion.

4.2. Substantial Completion. "Substantial Completion" means:

4.2.1. Subcontractor has achieved Mechanical Completion;

4.2.2. Subcontractor has satisfied all of the requirements for Substantial Completion set forth in the Scope of Work, including the provision of all deliverables to Contractor and the provision of at least five (5) Days' advance written notice to Contractor of the anticipated Substantial Completion Date;

4.2.3. Reserved.

4.2.4. No Liens are outstanding against the Project; and

4.2.5. Subcontractor has provided written notice to Contractor, in substantially the form of the Substantial Completion Certificate, of Subcontractor's completion of all conditions precedent to Substantial Completion.

STRATA-0089087

4.3. <u>Final Completion</u>. "Final Completion" means:

    4.3.1. Subcontractor has satisfied all of the requirements for Final Completion set forth in the Scope of Work;

    4.3.2. Subcontractor has achieved Mechanical Completion and Substantial Completion;

    4.3.3. Subcontractor has provided Contractor its breakdown listing of Virginia-based entity involvement in the Project, as provided in Section 3.13;

    4.3.4. Subcontractor has completed all punchlist work;

    4.3.5. No Liens are outstanding against the Project and Subcontractor has provided conditional final Lien Releases for all sub-subcontractors, suppliers, and vendors of any kind, as well as a conditional final Lien Release for Subcontractor; and

    4.3.6. Subcontractor has provided written notice to Contractor, in substantially the form of the Final Completion Certificate, of Subcontractor's completion of all conditions precedent to Final Completion.

4.4. <u>Milestone Completion and Project Closeout Procedures</u>.

    4.4.1. *Mechanical and Substantial Completion*. When Subcontractor believes it has satisfied the provisions of Section 4.2 or 4.3, as applicable, Subcontractor shall deliver a signed Mechanical Completion Certificate or Substantial Completion Certificate, as applicable, to Contractor in the form set forth in Exhibit J (Milestone Completion Certificates). Contractor shall promptly review and respond to the Mechanical Completion Certificate or Substantial Completion Certificate, as applicable, accepting the Mechanical Completion Certificate or Substantial Completion Certificate, or rejecting Subcontractor's claim in writing, giving Contractor's reason(s) for rejection. If Contractor rejects the Mechanical Completion Certificate or Substantial Completion Certificate, Subcontractor shall take appropriate corrective action, and upon completion, shall resubmit the Mechanical Completion Certificate or Substantial Completion Certificate pursuant to the procedures set forth in this Section 4.5.1 until Contractor accepts the Mechanical Completion Certificate or Substantial Completion Certificate.

    4.4.2. *Final Completion*.

        4.4.2.1. *Timing*. Unless otherwise stated in the Scope of Work, Subcontractor shall complete performance of all conditions precedent to Final Completion within twenty (20) Business Days of Subcontractor's achievement of Substantial Completion. In addition to and without limiting the above requirements for Substantial Completion and Final Completion, Subcontractor shall, at least five (5) Business Days prior to Subcontractor's demobilization at the Site, provide written notice to Contractor of Subcontractor's intent to demobilize. Subcontractor shall not demobilize without Contractor's prior written consent provided by Contractor's project manager, which shall be provided or rejected, with basis for rejection, within five (5) Business Days from receipt of Subcontractor's written notice of intent to demobilize.

        4.4.2.2. *Certificate Submittal*. When Subcontractor believes it has satisfied the provisions of Section 4.3 and 4.4.2.1, Subcontractor shall deliver a signed Final Completion Certificate to Contractor in the form set forth in Exhibit J (Milestone Completion Certificates). Contractor shall promptly review and respond to Final Completion Certificate, accepting the Final Completion Certificate or rejecting Subcontractor's claim in writing, giving Contractor's reason(s) for rejection. If Contractor rejects the Final Completion Certificate, Subcontractor shall take appropriate corrective action, and upon completion, shall resubmit the Final Completion Certificate pursuant to the procedures set forth in this Section 4.5.2.2 until Contractor accepts the Final Completion Certificate.

    4.4.3. *Disputes Regarding Milestone Completion*. In the event of a dispute arising from the provisions of this Article 4, the Parties shall resolve such dispute in accordance with Article 27 of this Agreement.

## 5. PAYMENT & LIEN WAIVERS

5.1. <u>Payment:</u> Contractor will pay Subcontractor the Subcontract Price, which includes all costs for the Work, including any and all Taxes.

    5.1.1. *Progress Payments*. Subject to the provisions of this Article, Contractor will pay Subcontractor that portion of the Subcontract Price allocable to the portion of the Work completed, including any Milestones achieved, corresponding to

STRATA-0089088

the Payment Schedule (each payment, a "Progress Payment"); provided that Contractor shall withhold retainage of ten percent (10%) from each Progress Payment. Subcontractor's final Progress Payment shall include all retainage.

5.1.2. *Invoices.*

5.1.2.1. *Draft Invoice Submission.* No earlier than the twentieth (20th) day of each month, and no later than the twenty-fifth (25th) day of each month, Subcontractor may submit to Contractor for Contractor's review a proposed Subcontractor Invoice (as defined below). Contractor will reasonably cooperate with Subcontractor to provide comments and feedback on the proposed Subcontractor Invoice prior to its submission as provided below.

5.1.2.2. *Bi-weekly Invoice Submission.* If agreed by the Parties, Subcontractor shall submit an invoice twice a month to Contractor in substantially the form attached hereto as Exhibit G-1 (each, a "Subcontractor Invoice") detailing the appropriate Progress Payment for the portion of the Work completed, including any Milestones achieved, in the prior calendar month. Subcontractor shall submit each Subcontractor Invoice via email accountspayable@stratacleanenergy.com, copying Contractor's project manager. Each Subcontractor Invoice must include supporting documentation, satisfactory to Contractor, showing that the invoiced amount is properly due. In addition, each Subcontractor Invoice MUST include corresponding Lien Waivers from Subcontractor, all sub-subcontractors, and all suppliers. **A Subcontractor Invoice that is incomplete or inaccurate or that lacks sufficient supporting documentation required by this Agreement shall not, to the extent of such deficiency, constitute a valid request for payment.** Contractor may reject any incomplete or unsupported Subcontractor Invoice. Subcontractor shall pay for: labor, materials, and equipment used in connection with the performance of this Agreement through the completed Milestone covered by previous payments received from the Contractor, and shall furnish satisfactory evidence in each Subcontractor Invoice to verify compliance with the above requirements.

5.1.3. *Sales Taxes.* Subcontractor shall make reasonable commercial efforts to purchase Equipment so as to minimize any Sales Tax and shall consult and cooperate with Contractor as necessary to obtain the best Sales Tax benefits available. Subcontractor shall comply with the Contractor's instructions regarding invoicing and documentation for Sales Taxes to assist Contractor in compliance with such requirements of the Prime Contract, including but not limited to separately accounting for any Sales Taxes in each Subcontractor Invoice.

5.1.4. *Payment Period.* Contractor will pay Subcontractor undisputed amounts for satisfactory Work within thirty (30) Days after Contractor's approval of a Subcontractor Invoice submitted pursuant to Section 5.1.2.2. Contractor will approve each Subcontractor Invoice, or provide an explanation of its disapproval, within ten (10) Days of Contractor's receipt of such Subcontractor Invoice.

5.1.5. *Withholding/Backcharges.* Contractor may withhold from any Progress Payment otherwise due to Subcontractor, any amount reasonably necessary in Contractor's opinion to protect it from loss due to Subcontractor's failure to fully comply with any requirement of this Agreement, including but not limited to: (a) defective Work not remedied; (b) third party claims filed or reasonable evidence indicating probable filing of such claims, including but not limited to Liens; (c) failure of Subcontractor to make proper and timely payments for labor, materials or equipment; (d) an administrative fee of eight percent (8%) of the amount of any joint check issued pursuant to Section 5.4.1; (e) reasonable evidence that Work cannot be completed for the unpaid balance of the Subcontract Price; (f) reasonable evidence that the Work will not be completed within according to the schedule; or (g) failure to carry out Work in accordance with the Agreement.

5.1.6. *Final Payment.* Final payment constituting the entire unpaid balance of the Subcontract Price (including retainage) shall be made to Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Contract Documents, including achievement of Final Completion. Except for claims that Subcontractor has specifically preserved in accordance with applicable provisions within this Agreement, final payment waives any and all Subcontractor's claims related to this Agreement, but Contractor maintains its rights to enforce warranties and to require Subcontractor, at Subcontractor's cost, to fix nonconforming Work discovered later. As a condition precedent to receiving Final Payment, Subcontractor shall provide Contractor the following:

5.1.6.1. signed final Lien Waivers (in a form satisfactory to Contractor) from Subcontractor's sub-subcontractors, suppliers, laborers and materialmen;

5.1.6.2. completion of all punchlist requirements (punchlist items must be completed within seven (7) Days of notification); and

5.1.6.3. all close out documentation and other requirements contained in the Contract Documents.

STRATA-0089089

5.2. <u>Penalty for Delayed Subcontractor Invoices.</u> Subcontractor acknowledges that timely submission of Subcontractor Invoices is a critical aspect of the payment terms of this Agreement. Any Subcontractor Invoice submitted beyond the time provided in Section 5.1.2 above shall be subject to a two percent (2%) delayed submittal fee deducted from the Progress Payment.

5.3. <u>Payment Not Acceptance.</u> In the event there is partial, progress or final payment to Subcontractor prior to Owner's acceptance of such Work, said payment shall not operate as an approval or acceptance of Work performed or materials furnished. All prior partial or progress payments are subject to correction in the final payment.

5.4. <u>Obligation to Pay Downstream Parties; Subcontractor Liens.</u> Subcontractor shall pay, and shall ensure its sub-subcontractors pay, all subcontractors, suppliers, vendors, and third parties of all tiers for labor, services, materials, equipment, and/or supplies provided in the performance of the Work, or related to the Project. Subcontractor shall keep the Site and the Project free and clear of all Liens.

    5.4.1. <u>Joint Checks to Sub-Subcontractors or Suppliers.</u> Contractor shall, following  notice to and discussions with Subcontractor, have the right to contact any sub-subcontractor, supplier, or vendor of any kind to confirm work performed, amounts owed, amounts in dispute, and/or payments made relating to the Project. In the event Contractor determines a sub-subcontractor, supplier, or vendor of any kind remains unpaid for work performed relating to the Project, Contractor may, in addition and not in lieu of Contractor's other rights pursuant to this Agreement, and in Contractor's sole discretion, issue a joint check to Subcontractor and the unpaid sub-subcontractor, supplier, or vendor for the unpaid amount owed. Consistent with Section 5.1.5 of this Agreement, in the event Contractor issues a joint check pursuant to this Section 5.4.1, Contractor may withhold from Subcontractor an administrative fee of eight percent (8%) of the amount of the joint check.

    5.4.2. <u>Obligation to Discharge Liens.</u> Should any Lien be filed against the Site or the Project, or be claimed against Contractor or Owner, Subcontractor shall, within five (5) Days of becoming aware of the Lien, pay, satisfy, release and/or discharge the Lien. In the event Subcontractor fails to timely pay, satisfy, release and/or discharge the Lien as provided herein, Contractor may (but is not obligated to) pay, satisfy, release and/or discharge the Lien, and to withhold or offset all costs and expenses of such action, plus an administrative fee of fifteen percent (15%).

## 6.  SCHEDULE

6.1.    <u>Generally.</u> Subcontractor shall achieve Mechanical Completion on or before the Guaranteed Mechanical Completion Date. Subcontractor shall achieve Substantial Completion on or before the Guaranteed Substantial Completion Date. Subcontractor agrees to begin the Work in accordance with the agreed upon Schedule within two (2) Days after being notified by Contractor to proceed. Subcontractor shall diligently and continuously complete the Work in cooperation and coordination with the other work being performed on the Project so as not to delay the commencement, progress, or completion of the Work or of the Project. Subcontractor agrees that the Work will be performed as required by Contractor, promptly and efficiently, and without delaying other aspects of the Work or the Project; and if necessary, certain parts of the Work shall be completed in preference to others. Subcontractor shall provide requested input into, will be bound by, and shall perform its work in compliance with the Project Schedule, as such schedule may be subsequently modified. For the avoidance of doubt, Contractor may at any time issue a revised or modified Project Schedule to Subcontractor, and Subcontractor shall be entitled to a Change Order arising out of such revised or modified Project Schedule only as provided in Article 7 of the Agreement.

6.2.    <u>Time of the Essence.</u> Time is of the essence with respect to performance of the Work. The Subcontractor must promptly inform the Contractor of anything that it becomes aware of which is likely to affect the cost, quality or timing of performance of the Work, and must propose action to avoid or minimize any adverse effect to Contractor.

6.3.    <u>Project Schedule; Subcontract Schedule.</u> Subcontractor shall perform the Work in accordance with the Project Schedule as set forth in Exhibit B-1, and as may be revised or modified by Contractor in accordance with Section 6.1 of this Agreement. Within five (5) Days of the Effective Date, Subcontractor shall meet with Contractor and the Parties shall review and approve the Project Schedule (the "Subcontract Schedule"). Subcontractor shall regularly update the Subcontract Schedule, and shall provide updated Subcontract Schedules to Contractor in its Weekly Reports and Monthly Reports as detailed below.

6.4.    <u>Reports.</u> Subcontractor shall, on a daily basis and prior to the beginning of the next day, submit written reports to Contractor in substantially the form set forth in Exhibit G-3 (the "Daily Reports"). Subcontractor shall, on a weekly basis and prior to the beginning of the next week, submit written reports to Contractor in substantially the form set forth in Exhibit G-4 (the "Weekly Reports"). The Weekly Reports shall include an updated version of the Excel Construction Plan. Subcontractor shall, on a monthly basis and no later than the fifth (5th) of each month, submit written reports to Contractor in substantially the form set forth in Exhibit G-5 (the "Monthly Reports"). The Monthly Reports shall include an updated version of the Excel Construction Plan. The Daily Reports, Weekly Reports, and Monthly Reports shall reflect the actual progress of the Work as performed by Subcontractor at the Site. Each Weekly Report shall

STRATA-0089090

DocuSign Envelope ID: 96B59533-06DD-4AA4-8409-D256682147B4

Case 1:21-cv-00616-MSD-DEM   Document 67-12   Filed 09/22/23   Page 16 of 33 PageID# 4428
21.17.681.043        Civil Construction        Subcontract Trade
       11-Oct-2021

detail Subcontractor's plan for performance of the Work for the next three (3) weeks based on Subcontractor's actual progress of the Work.

    6.5.   <u>Recovery Plans.</u> If, at any time, Subcontractor fails to make sufficient progress in its performance of the Work (including but not limited to Subcontractor's failure to timely start or complete any of the activities provided in the Schedules), Subcontractor shall, within two (2) Days of becoming aware of such delay, submit to Contractor a written plan describing the actions Subcontractor will take to recover from the delays and regain compliance with the Schedules, including but not limited to details regarding Subcontractor's plan to improve its methods or change or increase or supplement the workforce and equipment and/or perform the Work on an overtime or multiple shift basis to such an extent as to give reasonable assurance of compliance with the Schedules, as well as reasonable assurance of Subcontractor's ability to achieve Mechanical Completion on or before the Guaranteed Mechanical Completion Date and Subcontractor's ability to achieve Substantial Completion on or before the Guaranteed Substantial Completion Date (a "Recovery Plan"). Contractor shall promptly review and comment on the Recovery Plan, and Subcontractor shall promptly incorporate Contractor's comments into the Recovery Plan. Upon Contractor's approval, Subcontractor shall immediately implement the Recovery Plan. Unless the underlying cause for Subcontractor's delayed performance of the Work entitles Subcontractor to a Change Order as provided in Article 7 of this Agreement, the preparation and implementation of the Recovery Plan shall be at Subcontractor's sole cost and expense.

    6.6.   <u>Reserved.</u>

## 7.   CHANGES

    7.1.   <u>Changes.</u> Any change to the Work shall only be valid pursuant to a written Change Order signed by both Parties (each, a "Change Order"). Subcontractor agrees that obtaining a fully-executed Change Order pursuant to this Article 7 shall be the sole and exclusive remedy available to Subcontractor for any adjustment to the Subcontract Price and/or the Project Schedule, and Subcontractor hereby waives and shall not be entitled to any other compensation, extension of time, reimbursement of expenses or additional payment regardless of the nature of the change or event allegedly justifying any recovery.

    7.2.   <u>Bases for Change Order.</u> Subcontractor shall be entitled to a Change Order only from one of the following:

      7.2.1. The occurrence of a Force Majeure Event or an Event of Delay (as and only to the extent permitted by Article 17 of this Agreement); and

      7.2.2. Contractor-Directed Changes in Work (as and only to the extent permitted by Section 7.5 of this Agreement).

    7.3.   <u>Remedies; Change Order Request.</u> Subcontractor shall be entitled to an extension of the Schedule to the extent any critical path obligation has been affected by a Force Majeure Event, Event of Delay, or Contractor-Directed Change in Work. Subcontractor may be entitled to an increase in the Subcontract Price due to a Force Majeure Event or an Event of Delay. Subcontractor shall be entitled to an equitable adjustment in the Subcontract Price for the reasonable, out-of-pocket costs incurred as a direct result of the Contractor-Directed Change in Work. Within five (5) Days after the date the Force Majeure Event or Event of Delay has ended, or within five (5) Days after receipt of a Contractor-Directed Change in Work (as applicable), Subcontractor shall provide to Contractor a written assessment of the extent any critical path obligation has been affected by the Force Majeure Event, Event of Delay, or Contractor-Directed Change in Work, including appropriate statement setting forth the reasons why Contractor believes additional compensation or additional time should be granted, the detailed nature of any costs to be incurred, including reasonable adjustment to other applicable Contract provisions, and the probable length of any delay in performance of the Work, including Guaranteed Dates (each, a "Change Order Request"). Subcontractor must submit a completed Change Order Request in the form attached hereto as Exhibit G-6 (Form of Change Order Request). The request shall be submitted to the Vice President of Project Management, the Project Manager as well as the Subcontracts Manager. Subcontractor shall bear the burden of proof as to its entitlement to a Change Order as well as the extent of additional time and/or compensation in any Change Order Request.

    7.4.   <u>Change Orders.</u> Changes to the Work shall only be valid if accomplished pursuant to a written agreement signed by both Parties. Subcontractor's total combined overhead and profit charges for Change Order Work may not exceed five percent (5%).

    7.5.   <u>Contractor-Directed Changes in Work.</u> Contractor may, by written direction to Subcontractor, direct changes in the Contract Documents, and the Work, within the general scope of the Project, including changes, deletions or removals, modifications, accelerations, and revisions thereto (each, a "Contractor-Directed Change in Work").

      7.5.1. <u>Contractor-Directed Changes in Work; Acceleration of the Work.</u> In the event of a Contractor-Directed Change in Work, Subcontractor shall, within five (5) Days after receipt of the Contractor-Directed Change in Work, provide to Contractor a Change Order Request as set forth in Section 7.3. In the event a Contractor-Directed Change in Work requires Subcontractor to accelerate performance of the Work, Subcontractor's Change Order Request shall include a revised

STRATA-0089091

Subcontract Schedule detailing Subcontractor's plan to increase or supplement the workforce and equipment, as well as any overtime required to comply with the Contractor-Directed Change in Work.

7.5.2. <u>Subcontractor-Asserted Changes.</u> In the event Subcontractor believes any direction from Contractor materially impacts Subcontractor's performance of the Work, Subcontractor shall promptly (but no later than two (2) Days after receipt of Contractor's written direction) notify Contractor, in writing, of the nature of the impact of such direction and asserting Subcontractor's intent to pursue a Change Order to the extent of such impacts. Subcontractor's failure to provide timely written notice shall constitute a waiver of Subcontractor's right to seek a Change Order or any other relief relating to Contractor's written direction. Subcontractor shall use all commercially reasonable efforts to mitigate or otherwise overcome any impacts arising out of Contractor's written direction. Within five (5) Days after Subcontractor's written notification to Contractor, Subcontractor shall provide to Contractor a Change Order Request as set forth in Section 7.3.

7.5.3. <u>Directed Disputed Changes.</u> In the event the Parties fail to agree (a) that Subcontractor is entitled to a Change Order or (b) on the terms of a Change Order, which disputes shall be subject to the dispute resolution provisions provided in Article 27, Contractor may, in writing, direct Subcontractor to perform the Work in dispute or as modified by any potential or alleged change pending resolution of the dispute. Subcontractor shall separately track all impacts to the Project Schedule, and/or the Subcontract Schedule, as well as the reasonable costs alleged to have been incurred as a direct result of the suspension together with cost, pricing and other supporting documentation or data, and shall provide regular (at least monthly) updates to Contractor of such impacts. Consistent with the terms of this Agreement, Subcontractor shall not suspend the Work or refuse to perform the Work, and will proceed diligently with the Work, despite and pending the resolution of any dispute arising out of or related to this Agreement.

7.6.    <u>Change Order Authority Threshold.</u> Contractor's field superintendents do not have authority to authorize Change Orders involving changes to the Subcontract Price or Schedule modifications. Subcontractor acknowledges and understands that Subcontractor must obtain the signature of Contractor's Vice President of Project Management on any Change Order adjusting the Subcontract Price in excess of $50,000.00. Subcontractor further acknowledges and understands that Subcontractor must obtain the signature of Contractor's Chief Operating Officer on any Change Order adjusting the Subcontract Price in excess of $100,000.00. Subcontractor acknowledges and agrees that any qualifying Change Order pursuant to this Section 7.6 without the signatures of Contractor's Vice President of Project Management or Chief Operating Officer, as appropriate, shall cause the Change Order to be void *ab initio*.

7.7.    <u>Change Order Execution.</u> The execution of a Change Order by Subcontractor shall constitute conclusive evidence of Subcontractor's agreement to the ordered changes in the Work, the Contract Documents as modified thereby, the Subcontractor's compensation, and the Schedule for Subcontractor's Work. Subcontractor, by executing the Change Order, waives and forever releases any claim against Contractor for additional time or compensation for matters relating to or arising out of or resulting from the executed Change Order.

7.8.    <u>Acknowledgment of Obligations.</u> Subcontractor acknowledges that Contractor's right to direct and control the impacts to performance of the Work caused by changes in the Work (to the extent not within Subcontractor's assumption of the risks under this Agreement), including but not limited to the opportunity to mitigate impacts to performance of the Work, is a material consideration for Contractor to enter into this Agreement. Subcontractor acknowledges that its failure to comply with the provisions of this Agreement regarding changes in the Work causes material prejudice to Contractor, and Subcontractor hereby waives any right to seek a Change Order or any other relief for alleged impacts where Subcontractor has failed to comply with this Agreement. Subcontractor shall not be entitled to a Change Order to the extent of delays or impacts caused by the acts or omissions of the Subcontractor Group, including but not limited to remediation of defects in the Work. For the avoidance of doubt, any additional work performed by Subcontractor or its sub-subcontractors without an executed Change Order shall be performed at the sole risk and expense of Subcontractor.

## 8.  FORCE MAJEURE EVENTS; EVENTS OF DELAY

8.1.    <u>Force Majeure Event.</u> Subject to compliance with Section 8.3, below, Subcontractor shall not be liable to the extent of delay in performance of its obligations and responsibilities under this Agreement due to a Force Majeure Event. "Force Majeure Event" means an event that is not an Event of Delay and is unforeseeable, unavoidable, and outside of the claiming Party's control, not attributable to an act or omission or failure of the claiming Party, and not within the risks assumed by the claiming Party pursuant to this Agreement. Force Majeure Events shall include war, terrorism, rebellion, insurrection, riots, embargo, explosions, fire, floods, earthquakes, tornadoes, storm, or acts of God; provided, however, that the following shall not constitute a Force Majeure Event: (a) changes in general economic conditions such as inflation, interest rates or other factors of general application, (b) any shortage of labor, except for a shortage arising from a Force Majeure event at the Site, (c) weather conditions, unless weather conditions throughout the entirety of Subcontractor's performance of the Work are materially worse than those encountered in the geographic region of the Site at the relevant time of year during the twenty (20) years prior to the Effective Date, (d) Site Conditions, (e) the unavailability or shortage of skilled or unskilled labor, (f) any event which Subcontractor foresaw at or before the time of contracting, or (g) any event whose effects could

have been cured, remedied, avoided, offset, mitigated or otherwise overcome if Subcontractor had complied in all respects with its own policies (including disaster relief policies) or the policies contained in the Contract Documents.

8.2.    Event of Delay. Subject to compliance with Section 8.3, below, Subcontractor shall not be liable to the extent of delay in its performance of its obligations and responsibilities of this Agreement due to (a) a revised Subcontract Schedule or Project Schedule; (b) Contractor's failure to timely perform its obligations pursuant to this Agreement; (c) Contractor's suspension of Subcontractor's work without cause pursuant to Section 17.3; (d) discovery of preexisting Hazardous Material(s); or (e) due to the enactment, adoption, modification or repeal of an applicable Law after the Effective Date of this Agreement (each, an "Event of Delay").

8.3.    Notice and Impact of a Force Majeure Event or Event of Delay. Subcontractor shall promptly (but no later than two (2) Days after Subcontractor becomes aware, or reasonably should have become aware, of the occurrence of a Force Majeure Event and/or Event of Delay) notify Contractor, in writing, of the delay, the nature thereof, and the any expected impact on the Project Schedule. Subcontractor's failure to provide timely written notice shall constitute a waiver of Subcontractor's right to seek a Change Order or any other relief relating to the Force Majeure Event or Event of Delay. Subcontractor shall use all commercially reasonable efforts to cure, remedy, avoid, offset, mitigate or otherwise overcome the impacts of any Force Majeure Event or Event of Delay.

8.4.    Request for a Change Order; Remedies. Within five (5) Days after the date the Force Majeure Event or Event of Delay has ended, Subcontractor shall provide to Contractor a Change Order Request as set forth in Section 7.3. Subcontractor shall be entitled to an extension of its time of performance of any obligation affected by a Force Majeure Event or Event of Delay equivalent to the length of the applicable Force Majeure Event or Event of Delay.  Subcontractor may  be entitled to an increase in the Subcontract Price due to a Force Majeure Event or an Event of Delay in accordance with Section 7.3, above.

8.5.    Force Majeure Termination. If any Force Majeure Event claimed by Subcontractor delays, or is expected to delay, Subcontractor's performance for an aggregate time period greater than sixty (60) consecutive days, then Contractor, in its discretion shall have the right to terminate, without penalty or Liability, Subcontractor's right to proceed, in whole or in part, under this Agreement.

9.    **REPRESENTATIONS**

9.1.    General. Subcontractor hereby represents and warrants to Contractor that:

9.1.1.    The Subcontractor Group will, at all times during performance of the Agreement, be properly licensed, insured, certified and otherwise appropriately qualified to do the Work legally;

9.1.2.    Subcontractor will perform the Work safely, in a workmanlike manner, with satisfactory and well-maintained equipment, and with appropriately trained, supervised, and efficient personnel;

9.1.3.    Subcontractor shall employ a sufficient number of qualified Persons who shall be properly certified and licensed if required by applicable Laws, so that Subcontractor may complete the Work and Subcontractor's other obligations under this Agreement in an efficient, prompt, economical and professional manner and in accordance with the Subcontract Schedule and the Project Schedule;

9.1.4.    All material and equipment provided for, or incorporated into, the Project pursuant to this Agreement will be new, suitable for its intended use, free from faults or defects, and in compliance with the Contract Documents;

9.1.5.    Subcontractor will comply strictly with all laws, ordinances, rules, and regulations of all federal, state, local, and municipal authorities having jurisdiction at any time in effect and applicable to the performance of the Work;

9.1.6.    Subcontractor shall provide documentation in a format and frequency as necessary to comply with Contractor's Project controls requirements. Such documentation shall include, without limitation, financial information concerning the cost of the Work;

9.1.7.    Subcontractor shall, as part of the Work, coordinate with Contractor as necessary to provide training courses for Owner's plant operating personnel. Training course content shall cover, at a minimum, the following topics: (a) the testing of each item of operating Equipment; (b) the start-up, operation and shut-down of each item of operating Equipment; (c) the performance of routine, preventative and emergency maintenance for each item of operating Equipment; (d) recommended spare parts to be maintained for each item of operating Equipment and their installation and removal; and (e) all other topics required by the Contract Documents. Subcontractor shall submit all training materials for review and approval when and as directed by Contractor.

STRATA-0089093

9.1.8. Subcontractor will send appropriate representatives to attend meetings related to the Work and the Project as requested by Contractor and as required by the Contract Documents.

9.2. <u>Site Conditions.</u> Subcontractor represents that it has visited and inspected the Site, that it has reviewed the Site Information in Exhibit C, and that it has become familiar with local conditions under which the Work is to be performed (including, but not limited to subsurface and geotechnical engineering conditions; the location, condition, layout, grades, surface and elevations, dimensions, and surrounding area; generally prevailing and seasonal climatic conditions; anticipated labor supply and costs availability and cost of materials, tools, and equipment (collectively "Site Conditions"); and accepts the Site Conditions. Unless due to extenuating circumstances and as agreed by the Parties, the Contractor shall not be obligated to adjust either the Subcontract Price or the schedule for Subcontractor's Work to compensate for any costs or delays incurred as a result of differing Site Conditions. If Subcontractor observes man-made objects, fossils, human remains, or evidence of human burials, which have a reasonable likelihood of being determined by any Government Authority to be of historical value and require preservation; or Hazardous Materials Subcontractor shall notify Contractor and the Parties will decide on a course of action to address said conditions. Contractor shall be responsible to have the roadways at the Site installed and maintained. If Subcontractor damages the roadways while performing its Scope of Work, Subcontractor shall be responsible to cover the costs of repairs.

9.3. <u>Housekeeping.</u> Subcontractor shall keep the Site and surrounding area adjacent to where the Work is performed free from waste materials, rubbish, debris and other garbage, including liquid and non-liquid materials whether spilled, dropped, discharged, blown out or leaked. Subcontractor shall employ adequate dust control measures and utilize reasonable waste reduction and recycling techniques at the Site. Before demobilizing, Subcontractor shall remove from the Site and its surrounding area all Construction Equipment, waste materials, rubbish, debris and other garbage, and shall otherwise complete Site Restoration and leave the Facility, the Site and its surrounding area in a neat and clean condition. If Subcontractor fails to perform the foregoing services, upon reasonable written notice, Contractor may perform such services at Subcontractor's cost.

## 10. LAWS; PROJECT AND SITE RULES

10.1. <u>Compliance with Laws.</u> Subcontractor shall comply with all applicable Laws relating to the Work or the Facility, and Subcontractor shall give all applicable notices with respect to, and in accordance with, any applicable Laws. Subcontractor shall ensure that its Work complies, and, when operated in accordance with Prudent Industry Practices, shall comply with all applicable Laws. Without limiting the foregoing, Subcontractor shall comply with applicable provisions of Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act, Fair Labor Standards Act of 1938, Executive Order 11246 and Executive Order 13496 (29 C.F.R. Part 471, Appendix A to Subpart A), the Rehabilitation Act of 1973, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, the National Labor Relations Act, the Family and Medical Leave Act, the Worker Adjustment and Retraining Notification Act, the North Carolina Equal Employment Practices Act, the North Carolina Persons with Disabilities Protection Act and the North Carolina Retaliatory Employment Discrimination Act. Subcontractor shall also comply, and cause all sub-subcontractors to comply, with all applicable Contractor and Owner health, safety and security rules, programs or procedures. To the extent applicable, during the performance of this Agreement, Subcontractor shall observe and abide by 29 C.F.R., Part 470, and the Equal Employment Opportunity provisions contained in 41 C.F.R. 60-1.4, and 41 C.F.R. 60-250.5(a). Subcontractor shall abide by the requirements of 41 C.F.R. 60-300.5(a) and 60-741.5(a). **These regulations prohibit discrimination against qualified individuals on the basis of protected veteran status of disability, and require affirmative action by covered subcontractors to employ and advance in employment qualified protected veterans and individuals with disabilities.**

10.2. <u>Export Control Laws.</u> Subcontractor shall fully comply with all applicable export and import control Laws with regard to any Work or with regard to information supplied by Contractor to Subcontractor under this Agreement. In particular, Subcontractor shall not directly or indirectly use, export, re-export, distribute, transfer or transmit any such Work or information in whole or in part and in any form without all required United States and foreign government licenses and authorizations, including any applicable export control licenses of the U.S. Nuclear Regulatory Commission, the U.S. Department of Energy or the U.S. Department of Commerce. In no event shall Contractor be obligated under this Agreement or any other agreement to provide access to or furnish any Work or information except in compliance with applicable United States export control Laws.

10.3. <u>Foreign Corrupt Practices Act.</u> With respect to the performance of the Work, Subcontractor shall comply with all provisions of the U.S. Foreign Corrupt Practices Act, the U.K. Bribery Act 2010 and all other applicable domestic or foreign anti-bribery and anti-money laundering Laws, and not take any action that could result in any Contractor Person becoming subject to any action, penalty or loss of benefits under, or as a result of, any such Law.

10.4. <u>Cooperation in Governmental Investigation.</u> Subcontractor shall assist, and cause all sub-subcontractors to assist, Contractor in responding to requests by any Government Authority for information in connection with inspections or investigations of Contractor relating to the Work. Within one (1) Day of the request, or upon such other reasonable time as agreed by the Parties, Subcontractor shall make Subcontractor Persons available at the Site for interviews and shall produce copies of any documents relevant to the investigation to Contractor. Except as prohibited by applicable Law, Subcontractor shall promptly inform Contractor of inspections and investigations

on Subcontractor's property, and of subpoenas, document requests, requests for information, deposition notices, discovery requests, or similar requests by any Government Authority, concerning Contractor, the Work, or any accidents, injuries, illnesses or claims resulting from the Work.

## 11. ENVIRONMENTAL, HEALTH AND SAFETY

11.1. <u>Environmental, Health and Safety Programs.</u> Subcontractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with its performance of this Agreement, including appropriate precautions and programs for areas in, or in the vicinity of, the Project. Without limiting the generality of the foregoing, Subcontractor shall comply with all applicable Laws, and Subcontractor shall be solely responsible for the safety of, and prevention of accident or injury on or about the Project and related to its Work. Subcontractor agrees that it and its subcontractors, suppliers, agents and guests of any of them will at all times comply with all Contractor's safety and security regulations/standards in effect from time to time on the Project, including, but not limited to, the Subcontractors Quality Assurance Program (Exhibit D), and the Safety Plan (Exhibit E, including for the avoidance of doubt Exhibit E-1 and Exhibit E-2). Subcontractor shall bear sole responsibility for the safety of its Work on the Project, its sub-subcontractors, suppliers, employees, agents and guests of any of them.

11.1.1. <u>Work Site Safety.</u> Subcontractor recognizes the importance of the safety of all workers at the Site and agrees that accident prevention shall be an integral part of Subcontractor's operations. Subcontractor shall provide and maintain adequate first-aid facilities and shall cooperate with all other contractors at the Site and with Contractor. Subcontractor shall furnish all reasonable information concerning the safety of its operations as may be required by Contractor, including records of accidents to employees, radiation exposure hours of employees, and time lost due to accidents. In the event that Contractor discovers a condition or Work practice that it reasonably considers to be unsafe, Contractor may suspend the Work, in whole or in part, until the unsafe condition or Work practice is made safe, and Subcontractor shall not be entitled to a Change Order as a result of such suspension

11.1.2. <u>Precautions and Procedures.</u> Subcontractor shall take all reasonable precautions for the safety of, and shall provide reasonable protection to prevent damage, injury or loss to Persons and property resulting from the Work, including:

11.1.2.1.    Subcontractor Persons and all other Persons who may be affected by the performance of the Work;

11.1.2.2.    the Equipment to be incorporated into the Project, whether in storage on or off the Site or under the care, custody or control of Subcontractor or sub-subcontractors; and

11.1.2.3.    other property at or adjacent to the Site, including trees, shrubs, lawns, walks, pavements, roadways, structures and utilities.

11.1.2.4.    Subcontractor shall give notices and shall comply with applicable Laws bearing on safety of persons or property or their protection from damage, injury or loss.

11.1.2.5.    Subcontractor shall erect, maintain or undertake, as required by existing conditions and the performance of this Agreement, all reasonable safeguards for the safety and protection of Persons and property, including posting danger signs and other warnings against hazards, promulgating safety regulations, and notifying owners and users of adjacent sites and utilities.

11.1.2.6.    Subcontractor agrees to provide to Contractor the name, title, and phone number of its emergency contact person prior to the commencement of the Work.

11.1.2.7.    Within twenty four (24) hours of its occurrence and in addition to reporting to Government Authorities as required by applicable Law, Subcontractor shall notify Contractor in writing of (a) any incident, injury or illness experienced by a Subcontractor Person in the performance of any of the Work or on any part of Owner's premises or lands or (b) any fatality of a Subcontractor employee or, when acting on a project for Subcontractor, sub-subcontractor employee that occurs at any location (without regard to whether such employee was performing Work hereunder or located on Owner's premises or lands at the time of such occurrence), and shall provide copies of the OSHA 101 and OSHA 200 or 300 log entry for such incident, injury, illness or fatality. Within three (3) Days of the incident, injury, illness or fatality, Subcontractor shall provide a preliminary written report of the incident, injury, illness or fatality and the measures to prevent a similar occurrence in the future. Contractor has the right to request a final report, which Subcontractor shall provide within three (3) Days of Contractor's request. For all accidents that involve Subcontractor or any sub-subcontractor on a project for Contractor (whether the Work or any other project) and that cause death or serious bodily injury, Subcontractor shall immediately notify

STRATA-0089095

Contractor's Project Manager and Contractor's health and safety representative by telephone or messenger, giving full details and statements of any witnesses.

11.1.2.8.    Subcontractor shall not load, unload or permit any part of the Equipment to be loaded or unloaded at, or in the vicinity of, the Site so as to endanger the safety of Persons or property.

11.1.2.9.    In the event of any emergency endangering life or property, Subcontractor shall take all actions as may be reasonable and necessary to prevent, avoid or mitigate injury, damage or loss and shall promptly report each such emergency, and Subcontractor's responses thereto, to Contractor.

11.2.    No Reliance. SUBCONTRACTOR ACKNOWLEDGES AND AGREES THAT ANY MINIMUM SAFETY, HEALTH, ENVIRONMENTAL OR OTHER REQUIREMENTS AS MAY BE PROVIDED BY CONTRACTOR TO SUBCONTRACTOR ARE NOT INTENDED TO (AND DO NOT) PROVIDE LEGAL OR OTHER PROFESSIONAL ADVICE AND CONTRACTOR MAKES NO REPRESENTATIONS OR WARRANTIES THAT THE INFORMATION CONTAINED THEREIN SATISFIES REQUIREMENTS OF ANY LAWS. SUBCONTRACTOR AGREES THAT IT SHALL CONSULT WITH AND RELY SOLELY UPON ITS OWN LEGAL COUNSEL OR OTHER QUALIFIED PERSONS WITH RESPECT TO SATISFYING REQUIREMENTS OF ANY LAWS AS ARE APPLICABLE TO THE WORK. SUBCONTRACTOR ACKNOWLEDGES AND AGREES THAT (A) IT IS NOT RELYING ON ANY CLAIM OR REPRESENTATION OF CONTRACTOR RELATIVE TO ANY SAFETY, HEALTH, ENVIRONMENTAL OR OTHER REQUIREMENTS, (B) CONTRACTOR EXPRESSLY DISCLAIMS ANY CLAIM OR REPRESENTATION THAT THE INFORMATION CONTAINED IN ANY SAFETY, HEALTH, ENVIRONMENTAL OR OTHER REQUIREMENTS FROM CONTRACTOR WILL PRODUCE ANY PARTICULAR RESULTS, INCLUDING COMPLIANCE WITH ANY LAWS, AND (C) CONTRACTOR SHALL NOT BE RESPONSIBLE FOR ANY ERRORS OR OMISSIONS IN THE DESIGN, IMPLEMENTATION, AND/OR ENFORCEMENT OF ANY SAFETY, HEALTH, ENVIRONMENTAL OR OTHER REQUIREMENTS.

11.3.    OSHA and Other Laws. Subcontractor shall give notices and comply with all applicable Laws bearing on the safety of Persons or property or their protection from damage, injury or loss, including the Occupational Safety and Health Act ("OSHA") and the Americans with Disabilities Act.

11.3.1.    Subcontractor represents that it is familiar with the Site and its vicinity, the Services to be performed, the Equipment to be provided, the Facility to which the Equipment will be a part, the hazards of the Work Subcontractor also represents that it is familiar with the labeling system used in the workplace.

11.3.2.    Subcontractor acknowledges that OSHA, its regulations and standards or the state equivalents (collectively, the "OSHA Standards") require that Subcontractor Persons be trained in various subjects, such as, but not limited to, the hazards of, and standards applicable to, the Work (29 C.F.R. § 1926.21(b)(2)) (applicable to construction work), lockout/tagout (29 C.F.R. § 1910.147), confined space entry (29 C.F.R. §§ 1926.21(b)(6) or 1910.146), and asbestos (29 C.F.R. §§ 1910.1001 or 1926.1101). Subcontractor shall ensure that any Person performing any Services shall have been trained, prior to performing such Services, in accordance with all applicable OSHA Standards as well as to recognize and avoid any hazards related to the Work and to perform the Services safely and without danger to any person or to any property.

11.3.3.    Subcontractor shall ensure that each Subcontractor Person shall have been equipped, prior to performing any Work, with the personal protective equipment required by applicable OSHA Standards in 29 C.F.R. Parts 1926 and 1910, and with the personal protective equipment required to protect Subcontractor Persons against other serious health or safety hazards. Subcontractor agrees that it shall discipline any Subcontractor Person who violates any OSHA Standards or other applicable Laws in accordance with its own policies and procedures.

11.3.4.    Subcontractor shall comply with all OSHA Standards applicable to the Work, including those requiring pre-employment testing of employees, including pulmonary testing, blood testing, urine testing, hearing testing, respirator fit testing, drug screening, and/or applicable medical surveillance testing.

11.3.5.    Subcontractor shall fully comply with its safety programs and any Project specific safety plans, including Contractor's Safety Plan, in effect.

11.3.6.    Within twenty-four (24) hours of a request by Contractor and to the extent permitted by applicable Law, Subcontractor shall provide Subcontractor with copies of any and all training for Subcontractor Persons concerning any safety and health standard, any substantive or technical training requirement of the job or the results of any occupational testing.

STRATA-0089096

## 12. HAZARDOUS MATERIALS

IN THE ABSENCE OF CONTRACTOR'S EXPRESS AND PRIOR WRITTEN CONSENT, SUBCONTRACTOR SHALL NOT, AND SHALL ENSURE THAT ALL SUBCONTRACTOR PERSONS SHALL NOT, CAUSE, BRING, OR PERMIT ANY HAZARDOUS MATERIALS TO BE BROUGHT ONTO, OR IN THE VICINITY OF, THE SITE, DURING THE PERFORMANCE OF THE WORK. In the event Subcontractor anticipates the need to bring any Hazardous Materials onto or in the vicinity of the Site, Subcontractor shall immediately (and in no event less than thirty (30) Days prior to the order placement, shipment, or transportation of Hazardous Materials) provide written notice to Contractor requesting permission to bring the Hazardous Material onto or in the vicinity of the Site, identifying the anticipated Hazardous Material and providing reasonable basis for its need. Contractor shall promptly respond to Subcontractor, providing Contractor's written consent or reasonable basis for rejection of Subcontractor's request.

Subcontractor shall be solely and strictly liable for any Hazardous Material brought by any Subcontractor Person onto or in the vicinity of the Site. Subcontractor shall at all times comply with all applicable Laws regarding Hazardous Materials, and Subcontractor shall at all times comply with Contractor's direction and procedures regarding Hazardous Materials, including but not limited to the proper labeling, handling, collection and containerizing of any Hazardous Materials at the Site in order to obtain the highest standards of prudent practice at the Site for the safety of all Subcontractor Persons. Subcontractor shall cooperate with Contractor in reporting the presence and use of such Hazardous Materials to local fire, medical, and law enforcement agencies as required by applicable Law and Government Authorities. Subcontractor's compliance with this Article 11 shall not be the basis for a Change Order.

In the event during the performance of the Work that Subcontractor discovers or reasonably suspects the presence of pre-existing Hazardous Materials at the Site, such pre-existing Hazardous Materials shall be deemed an Event of Delay subject to the provisions of Articles 7 and 8, and Subcontractor shall provide immediate written notice to Contractor of such pre-existing Hazardous Materials.

## 13. SUBCONTRACTOR PERSONNEL

13.1.  Supervision & Discipline. Subcontractor shall supervise, coordinate and direct the Work using Subcontractor's best skill, judgment and attention. Subcontractor shall enforce strict discipline and good order among all Subcontractor Persons at, or in the vicinity of, the Site. Subcontractor shall at all times take all necessary precautions to prevent any unlawful or disorderly conduct by or among all Subcontractor Persons and for the preservation of the peace and the protection of persons and property at, or in the vicinity of, the Site. Subcontractor shall be responsible for labor peace of all Subcontractor Persons (and all other Subcontractor Persons) at, or in the vicinity of, the Site, and Subcontractor shall at all times exert its best efforts and judgment as an experienced contractor to adopt and implement policies and practices designed to avoid work stoppages, slowdowns, disputes and strikes where reasonably possible and practical under the circumstances.

13.2.  Subcontractor Key Personnel. Subcontractor's key personnel are listed in Exhibit A-4. Subcontractor shall not change any key personnel without the prior written consent of Contractor and Owner. If Subcontractor desires or is required to replace one of its key personnel, Subcontractor shall provide written notice to Contractor of the identity and qualifications of the proposed replacement. If Contractor rejects, in its sole discretion, the proposed replacement, Subcontractor shall promptly propose an alternative replacement. The costs associated with the addition or replacement of Subcontractor's key personnel, regardless of the reason therefor, shall be borne by Subcontractor.

13.3.  Removal Rights. If Contractor determines, in its reasonable discretion, that the presence of any personnel of any Subcontractor Person on any of Owner's premises or the performance by any Subcontractor Person is not consistent with the best interest of Contractor, Contractor may notify Subcontractor of the determination, and Subcontractor shall remove that personnel from performing Work on Owner's premises (as applicable) under this Agreement. Removal and replacement of any such personnel shall be at no cost to Contractor. Subcontractor shall absorb any travel costs or travel time for the replacement personnel to any Owner premises and for the replaced personnel from any Owner premises. Any such personnel who is removed from the Site or the Work for violation of a requirement set forth in this Agreement shall not be eligible to provide any future Work under this Agreement without the express written consent of Contractor.

13.4.  Responsibility. Subcontractor shall at all times be solely responsible for all Subcontractor Persons, including but not limited to purposes of personal and professional liability. Subcontractor shall be solely responsible for all aspects of the labor relations of Subcontractor Persons, including wages, benefits, discipline, hiring, firing, promotions, pay raises, overtime and job and shift assignments. Contractor shall have no such responsibility. Such Subcontractor Persons, while performing any Work, shall be and remain the employees of the applicable Subcontractor Person at all times. Subcontractor shall also be responsible for the correct determination of the exemption status, in accordance with the Fair Labor Standards Act of 1938 and all other applicable federal, state, and local Laws, of all Subcontractor Persons and shall promptly address and resolve any discrepancies or issues discovered with respect to any such personnel's exemption status.

STRATA-0089097

13.5. <u>Compensation of Employees</u>. Subcontractor shall be responsible for ensuring that payment of compensation, and all taxes, assessments for unemployment insurance, social security and disability benefits, and other fees, benefits (including health and retirement) and taxes that are based upon such compensation, to all Subcontractor Persons is paid (or withheld and remitted to the appropriate Government Authority) as and when due. Subcontractor shall maintain payroll and other wage, benefit and tax records related to Subcontractor Persons in accordance with generally accepted accounting practices and all applicable Laws.

## 14. WARRANTY

14.1. <u>Warranty and Warranty Period.</u> Subcontractor warrants that (a) the Work shall be performed in a professional and workmanlike manner, in accordance with Prudent Industry Standards; (b) the Work shall conform to the requirements of this Agreement and all Contract Documents; (c) the Work shall reflect and be performed with competent professional knowledge and judgment; (d) the Work shall be free from errors, errors and omissions and defects in workmanship and material; and (e) the Equipment shall be will be new at the time of installation and will be of suitable grade of its respective kind and for its intended use and purpose (the "Warranty").The Warranty runs for a period of forty-eight (48) months after Substantial Completion, or for such longer time period covered by a special warranty provided by a sub-subcontractor or vendor as a normal part of the purchase. Subcontractor will extend its warranty for one (1) year for repaired or replaced Work. Subcontractor will assign to Contractor all warranties Subcontractor receives from sub-subcontractors and vendors. If Subcontractor does not promptly and effectively honor its warranty, Contractor may otherwise secure the performance of such work and charge Subcontractor for it. Such costs may include overhead, profit, professional fees, costs and expenses, and may be deducted from payments owed to Subcontractor.

14.2. <u>Warranty Remedies; Emergencies.</u> In the event Contractor timely notifies Subcontractor of a Warranty issue, Subcontractor, within forty-eight (48) hours of such notification, respond to Contractor's notice with a written proposal to reperform, repair or replace any defective or nonconforming Work. Contractor shall promptly respond with Contractor's approval or disapproval of the proposal, and Subcontractor shall, consistent with Contractor's direction, promptly (but in any event within five (5) Business Days of Contractor's initial notification) reperform, repair, or replace the defective or nonconforming Work at Subcontractor's cost. Subcontractor shall also repair or replace any property, work, or portion of the Project damaged by the defective or nonconforming Work, at Subcontractor's cost. In the event of a situation during the Warranty Period when continued operation of the Facility would result or potential result in severe, electrical or other damage to the Facility, danger to persons, or damage to other property, and/or a material loss or potential material loss of revenue or inability to operate the Facility for any reason, Subcontractor shall commence remediation work within twenty-four (24) hours of Contractor's notification. Should Subcontractor fail to comply with the provisions of this Article 14, Contractor may, at its option, perform the remediation work or have the remediation work performed by a third party, and charge Subcontractor with the costs of performing the remediation work.

14.3. <u>Enforcement and Assignment.</u> Contractor may assign all Subcontractor Persons warranties and guarantees to the Owner as and when required by the Prime Contract. Notwithstanding such assignment, Contractor shall be entitled to enforce such warranty as required by the Prime Contract. Owner shall have the right, but not the obligation, in its own name to proceed directly against any Subcontractor Persons warranties and guarantees. Neither Contractor, nor any Person of the Subcontractor Persons, shall take any action which could release, void, impair or waive any warranties or guaranties on equipment, materials or work that it procures from other Persons. Subcontractor shall execute and deliver such instruments of assignment as may be reasonably requested by Contractor to make effective or evidence the assignment of any Subcontractor Persons warranties or guarantees by Subcontractor as contemplated by this Article.

## 15. INDEMNITY

15.1. <u>Indemnification.</u> To the fullest extent permitted by law, Subcontractor shall defend, indemnify, and hold Contractor, Owner and their officers, directors, employees, agents, representatives, successors and assigns (collectively "Indemnified Persons") harmless from:

15.1.1. any Liability arising out of or resulting from claims for payment or compensation for the Work performed, including but not limited to Liens and claims relating to compensation or benefits for Subcontractor Persons;

15.1.2. any Liability arising out of or resulting from any Subcontractor Person who fails a drug or alcohol test, and any Subcontractor Person removed from the Site as provided in Section 13.2;

15.1.3. any Liability arising out of or resulting from Hazardous Materials brought or released by any Subcontractor Person;

15.1.4. any Liability arising out of or relating to an allegation that any of the Work or the Documentation, or use thereof, constitutes an infringement or misappropriation of any right of any third party, including any copyrights, mask work rights, patent rights, trademark rights, trade secret rights, confidentiality rights or other property rights;

15.1.5.   any Liability arising out of or resulting from Taxes or fines imposed by Government Authorities which Subcontractor is obligated to pay pursuant to this Agreement; and

15.1.6.   any Liability arising out of or resulting from the performance of the Work by the Subcontractor Group, except to the extent such Liability was caused by the sole negligence of the Indemnified Persons.

The indemnification obligations hereunder shall not be limited in any way by any limitation on compensation or benefits payable under workers' compensation acts, disability benefit acts or other benefit acts.

15.2.   Settlement of Third Party Claims. In the event of a claim brought by a third party against any Indemnified Person(s), Subcontractor, in the defense of any such litigation, other proceeding or other claim, shall have the right in its sole discretion to compromise or settle such claim only if (a) such compromise or settlement involves only the payment of money and execution of appropriate releases of the Indemnified Person(s), (b) there is no finding or admission of any violation of Law and (c) the Indemnified Person(s) will have no Liability with respect to such compromise or settlement. Otherwise, no such claim brought by a third party shall be settled or agreed to without the prior written consent of the Indemnified Person(s).

15.3.   Intellectual Property Indemnification. Notwithstanding the foregoing, in the event Subcontractor is required to defend, indemnify, and hold the Indemnified Persons harmless pursuant to Section 15.1.4, Subcontractor shall obtain Contractor's written consent, which may be withheld in Contractor's discretion, prior to entering into any settlement of any such claim, suit, or proceeding that does not include a complete Liability release for all Indemnified Persons or that would prohibit or restrict use of any part of the Work or the Documentation by any Indemnified Person(s). Subcontractor shall not permit the use of the Work or the Documentation by any of the Indemnified Persons to be enjoyed. If any such use may be enjoined (or, notwithstanding the foregoing, is enjoined), Subcontractor shall, at its option, either: (i) procure for such Indemnified Person(s) the right to continue using the Work and the Documentation to the full extent contemplated herein; (ii) replace the same with substantially equivalent non-infringing Work and Documentation acceptable to the Indemnified Person(s); or (iii) modify the same in a manner acceptable to Indemnified Person(s) and in conformance with the functional requirements of this Agreement so that it becomes non-infringing.

## 16. INSURANCE

Subcontractor shall comply with the insurance requirements set forth in Exhibit F.

## 17. TERMINATION & SUSPENSION

17.1.   Termination for Convenience. Contractor may for any reason whatsoever terminate Subcontractor's performance, in whole or in part, for Contractor's convenience. Contractor shall provide written notice of such termination for convenience to Subcontractor specifying when termination becomes effective and the scope of the Work affected by the termination.

17.1.1.   Upon such termination, Subcontractor shall, to the extent practicable and at the time specified by Contractor: (a) stop work on such terminated Work; (b) protect all property in which Contractor has or may acquire an interest; and (c) transfer title and make delivery to Contractor of all goods, components, materials or other property held or acquired by Subcontractor in connection with the terminated portion of the Work.

17.1.2.   In the event of termination of all or any part of the Work for Contractor's convenience, Subcontractor shall, within twenty (20) Days of such termination submit a written termination proposal to Contractor specifying the reasonable costs alleged to have been incurred as a direct result of the termination together with cost, pricing and other supporting documentation or data required by Contractor. Subcontractor's failure to submit a properly documented termination proposal within such twenty (20) Day period shall constitute a waiver of any right to compensation relating to the termination.

17.1.3.   Contractor shall review Subcontractor's properly submitted termination proposal and determine an amount due to Subcontractor. If the Parties cannot agree on an amount due to Subcontractor based upon its properly submitted termination proposal, Contractor shall pay undisputed amounts to Subcontractor and Subcontractor shall have the right to proceed under the dispute procedures pursuant to Article 27 of this Agreement.

17.1.4.   Contractor's maximum Liability for the Work related to such termination for convenience shall be a pro-rata amount of the total Subcontract Price, less advances or other payments to Subcontractor, based upon the Work properly performed prior to termination.

STRATA-0089099

DocuSign Envelope ID: 96B50533-06DD-4AA4-8409-D256682147B4

17.1.5.  In no event shall Subcontractor be entitled to recover from Contractor, on its own account or on behalf of any subcontractor, lost or anticipated profits, or other consequential damages on account of a termination for convenience or an erroneous termination for default.

17.2.  <u>Termination for Default</u>

17.2.1.  <u>Subcontractor Events of Default</u>. Subcontractor shall be in default of its obligations pursuant to this Agreement upon the occurrence of any one or more of the following circumstances (each a "Subcontractor Default"): (a) Subcontractor breaches any material terms or conditions of the Contract Documents (subject to any applicable cure period expressly provided in this Agreement or by written agreement of the Parties); (b) Subcontractor fails to provide a Change Order Request as set forth in Section 7.3; (c) Subcontractor fails to timely provide a Recovery Plan as set forth in Section 6.5, or Subcontractor fails to perform the Work in accordance with a Recovery Plan as set forth in Section 6.5; (d) Subcontractor fails to achieve Substantial Completion within sixty (60) days after the Guaranteed Substantial Completion Date, or Subcontractor fails to achieve Final Completion within sixty (60) days after the Guaranteed Final Completion Date; (e) Subcontractor fails to pay, or admits in writing its inability to pay, its debts as they become due, or shall voluntarily file any petition under any bankruptcy or similar law seeking dissolution, liquidation or reorganization or the appointment of a receiver, trustee, custodian, or liquidator for itself or a substantial portion of its assets or business, or is adjudicated bankrupt, or makes a general assignment for the benefit of creditors; or (f) involuntary proceedings or any involuntary petition is commenced or filed against Subcontractor under any bankruptcy or similar law seeking the dissolution, liquidation, or reorganization of Subcontractor, or any writ, judgment, warrant of attachment, execution, or similar process is issued or levied against a substantial part of the assets, or business of Subcontractor.

17.2.2.  <u>Contractor Remedies</u>. Upon the occurrence of a Subcontractor Default and following a reasonable period of time agreed by the Parties for Subcontractor to cure , Contractor shall have any or all of the following rights and remedies: Contractor may (a) suspend Subcontractor's performance, in whole or in part, under this Agreement by delivery of a written notice of suspension to Subcontractor; (b) supplement Subcontractor's workforce or hire a separate subcontractor to take over and perform any portion or all of the Work as Contractor deems necessary to cure the Subcontractor Default; (c) terminate Subcontractor's performance, in whole or in part, under this Agreement by a written notice of termination for default to Subcontractor; (d) seek equitable relief, including injunctive relief, to cause Subcontractor to take action, or refrain from taking action, or to make restitution of amounts improperly retained or received under this Agreement; (e) seek all other remedies at law or in equity, including proceeding against any security given by or for the benefit of Subcontractor for its performance of the Work; and (f) withhold any payments due and owing to Subcontractor until the Subcontractor Default is cured, or as necessary to assure payment for completion of Subcontractor's Work by others. If it is finally determined that no Subcontractor Default existed after Contractor terminated or suspended Subcontractors performance under this Agreement based on such alleged Subcontractor Default, such termination or suspension will be deemed to be a termination for convenience pursuant to Section 17.1 of this Agreement and Subcontractor's sole and exclusive remedy, whether in tort, contract or otherwise shall be strictly limited to those afforded by the termination for convenience pursuant to Section 17.1 of this Agreement.

17.2.3.  <u>Contractor Event of Default</u>. Contractor shall be in default of its obligations pursuant to this Agreement if Contractor fails to pay or cause to be paid any undisputed amount that has become due and payable by it to Subcontractor or is in default of a material breach under this Agreement within thirty (30) Days after receipt of a written notice from Subcontractor that such amounts are past due ("Contractor Default").

17.2.4.  <u>Subcontractor Remedies</u>. Upon the occurrence of a Contractor Default, Subcontractor shall have any or all of the following rights and remedies: Subcontractor may (a) suspend Subcontractor's performance of the Work upon written notice thereof to Contractor, provided Contractor fails to cure such cause for suspension within thirty (30) Days after written notice of such cause for suspension; (b) terminate Subcontractor's performance only in the event Contractor fails to cure any Contractor Default within thirty (30) Days after written notice of such Contractor Default; (c) subject to the limitations on liability set forth in this Agreement or other Contract Documents, seek equitable relief, including injunctive relief, to cause Contractor to take action, or refrain from taking action, or to make restitution of amounts improperly retained; (d) subject to limitations set forth in this Agreement, seek all other remedies at law or in equity.

17.3.  <u>Suspension without Cause</u>. Contractor may, for any reason whatsoever, order Subcontractor in writing to suspend all or any portion of Subcontractor's performance for a period of time as Contractor may request and Subcontractor shall comply with such order. The suspension shall commence on the date specified in Contractor's written notice of suspension. Subcontractor shall resume any suspended Work promptly, but in no event later than seven (7) Days after Contractor gives Subcontractor written notice to do so. A suspension pursuant to this Section 17.3 shall be an Event of Delay and subject to the requirements of Article 8, and Subcontractor shall be entitled to an extension of its time of performance of any obligation affected by this Event of Delay equivalent to the length of the Event of Delay and may be entitled to a change in price.

STRATA-0089100

DocuSign Envelope ID: 96B5DE33-08DD-4AA4-8409-D256682147B4
Redistribute Solar - Tindol          Civil Construction          Strata Contract Issue
21.17.681.043                                                     11-Oct-2021

Case 5:23-cv-00103-MSD-DEM   Document 67-12   Filed 09/22/23   Page 26 of 33 PageID# 4438

17.4.  Suspension with Cause. In the event (a) Subcontractor is performing Work contrary to the requirements of the Agreement; (b) Subcontractor is performing Work that if continued, could cause damage, preclude necessary inspection, or render remedial action ineffective for any portion of the Project; (d) there exists an actual or potential safety issue that is an imminent threat to Person(s) or property; (e) there exists a violation of applicable Laws or Government Approvals, or such violation is likely to result from continued performance; or (f) there exists interference with the existing operation of the Facility, Contractor may order Subcontractor to suspend all or any portion of Subcontractor's performance of the Work. In the event of a suspension pursuant to this Section 17.4, Subcontractor shall not be entitled to a Change Order.

## 18.  TRANSFER OF TITLE; RISK OF LOSS

18.1.  Transfer of Title. Except as otherwise expressly provided in this Agreement, good, exclusive and marketable title, free and clear of all Liens, to the Equipment and to each of the constituent parts thereof shall pass to Contractor upon the earlier of (a) payment of the amount then due under a Subcontractor Invoice covering such Equipment or constituent part thereof, notwithstanding any disputed amounts withheld or offset by Contractor against any payment sought by Subcontractor in accordance with the terms of this Agreement, or (b) delivery of the Equipment and each of the constituent parts thereof to the Site or a storage location approved by Contractor, which must be located in the Commonwealth of Virginia or the State of North Carolina. The passage of title to any Equipment to Contractor shall not be deemed an acceptance or approval of such Equipment (or any Work), affect the allocation of risk of loss or otherwise relieve Subcontractor of any obligation under this Agreement, including any obligation to provide and pay for transportation and storage in connection with such Equipment. Further, it is acknowledged by the Parties that, upon the passage of title, the Equipment and the constituent parts thereof shall be specifically excluded from the bankruptcy estate of Subcontractor in the event of any bankruptcy or insolvency proceeding involving Subcontractor. Subcontractor represents and warrants that it has and shall have all rights, power and authority to transfer good, exclusive and marketable title, free and clear of all Liens (other than Liens created by the non-payment by Contractor of a Payment Invoice which is not the subject of a good faith dispute), to the Documentation, the Equipment and the constituent parts thereof to Contractor as and when provided hereunder. The title (and all related rights) to Equipment, and to each of the constituent parts thereof, provided by Subcontractor pursuant to this Agreement shall pass to Owner when and as required by the terms of the Prime Contract.

18.2.  Risk of Loss. Whether or not title has passed to Contractor, the risk of loss for all Equipment to be installed as a component of the Work shall remain with Subcontractor until, and shall pass to Contractor upon, completion of Subcontractor's Work. Subcontractor shall be obligated to replace, repair or reconstruct the Equipment that is lost, damaged, or destroyed during the period in which Subcontractor has risk of loss. For Equipment that is removed from the Site for repair, replacement or refurbishment under any Warranty provided by Subcontractor, the risk of loss to such Equipment shall pass to Subcontractor upon it being moved from the location at which it was installed.

## 19.  LIENS

In the absence of a Contractor Default, Subcontractor shall keep the Project, the Equipment, and all other structures and equipment for the Project free from all Liens, and shall promptly (in any event, within two (2) Days of Subcontractor's knowledge) notify Contractor of any such Liens.  For the avoidance of doubt, and to the extent permitted by applicable Laws, Subcontractor agrees that Subcontractor shall not file a Lien unless and until a Contractor Default has occurred pursuant to the terms of this Agreement. Without limiting the foregoing, Subcontractor shall promptly, and in any event with five (5) Days, discharge or bond any Lien as required by applicable Law to remove such Lien. If Subcontractor fails to so discharge or bond such Lien, Contractor shall have the right to take any and all actions and steps to satisfy, defend, settle or otherwise remove such Lien and to backcharge Subcontractor for the costs thereof, plus an administrative fee of fifteen (15%).

## 20.  INDEPENDENT CONTRACTOR

Subcontractor shall be an independent contractor with respect to the Project and the Work, and neither Subcontractor nor its sub-subcontractors nor the employees of either shall be deemed to be agents, representatives, employees or servants of Contractor or Owner in connection with this Agreement. The Parties covenant and agree that in the performance of the Work, Subcontractor shall not perform any act or make any representation to any Person to the effect that Subcontractor or any of its agents, representatives or sub-subcontractors, is the agent of Contractor or Owner. Subcontractor, sub-subcontractors, and the employees of either shall have no right and shall make no claim under any employee plan or benefit plan or program of Contractor, Owner, or any of their affiliates, and Subcontractor shall defend, indemnify and hold all Indemnified Persons harmless for claims, suits and other Liabilities resulting therefrom.

## 21.  APPLICABLE LAW

This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, without reference to its principles of conflicts of laws.

STRATA-0089101

## 22. CONSEQUENTIAL DAMAGES

22.1.  NO CONSEQUENTIAL DAMAGES. NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, PUNITIVE OR SPECIAL DAMAGE ARISING FROM THE PERFORMANCE OR FAILURE OF PERFORMANCE UNDER THIS AGREEMENT, INCLUDING CLAIMS FOR LOSS OF PROFITS, LOSS OF REVENUE, LOSS OF PRODUCTIVITY, CLAIMS FOR CUMULATIVE IMPACT, OR LOSS OF USE, LOSS OF OPPORTUNITY OR GOODWILL, COST OF CAPITAL, OR COST OF PURCHASED OR REPLACEMENT POWER. FOR THE SAKE OF CLARITY, AND NOTWITHSTANDING THE FOREGOING, THE PARTIES HEREBY AGREE THAT THE FOLLOWING SHALL NOT BE CONSIDERED CONSEQUENTIAL DAMAGES AND ARE EXPRESSLY EXCLUDED FROM THE ABOVE WAIVER: (A) RESERVED(B) DAMAGES PAYABLE TO CONTRACTOR UPON THE OCCURRENCE OF A SUBCONTRACTOR DEFAULT PURSUANT TO SECTION 18.2.1 OF THIS AGREEMENT; (C) DAMAGES TO THE EXTENT COVERED BY INSURANCE REQUIRED PURSUANT TO THIS AGREEMENT; (D) WITH RESPECT TO INDEMNITY OBLIGATIONS PURSUANT TO ARTICLE 15 OF THIS AGREEMENT; (E) WITH RESPECT TO THE PARTIES' OBLIGATIONS REGARDING CONFIDENTIAL INFORMATION PURSUANT TO ARTICLE 25 OF THIS AGREEMENT; (F) WITH RESPECT TO INTELLECTUAL PROPERTY OBLIGATIONS PURSUANT TO ARTICLE 24 OF THIS AGREEMENT; AND (G) IN CASES OF GROSS NEGLIGENCE, FRAUD, WILLFUL MISCONDUCT OR ILLEGAL ACTS OF A PARTY.

22.2.  Maximum Total Liability. THE TOTAL AGGREGATE LIABILITY OF SUBCONTRACTOR TO CONTRACTOR, ON THE ONE HAND, AND OF CONTRACTOR TO SUBCONTRACTOR, ON THE OTHER HAND, ARISING OUT OF OR RELATING TO THIS AGREEMENT, FROM ANY AND ALL CAUSES, WHETHER BASED ON CONTRACT, TORT (INCLUDING NEGLIGENCE, STRICT LIABILITY OR OTHERWISE), GUARANTEE, WARRANTY OR OTHERWISE, OR ANY OTHER CAUSE OF ACTION, SHALL IN NO EVENT EXCEED ONE HUNDRED PERCENT (100%) OF THE CONTRACT PRICE; PROVIDED, HOWEVER, THAT THE MAXIMUM LIABILITY AMOUNT SHALL NOT APPLY TO, AND NO CREDIT SHALL BE ISSUED AGAINST THE MAXIMUM LIABILITY AMOUNT FOR, (A) ANY CLAIM FOR FRAUD, GROSS NEGLIGENCE, WILLFUL MISCONDUCT OR ILLEGAL ACTS; (B) INDEMNITY OBLIGATIONS HEREUNDER WITH RESPECT TO THIRD PARTY CLAIMS; (C) CLAIMS WHICH ARISE FROM A BREACH OF OBLIGATIONS UNDER ARTICLE 19, , OR 24; (D) A DELAY CAUSED SOLELY BY SUBCONTRACTOR THAT CAUSES CONTRACTOR TO OWE DELAY LIQUIDATED DAMAGES TO OWNER; OR (E) PAYMENT OF THE CONTRACT PRICE TO SUBCONTRACTOR BY CONTRACTOR.

## 23. TITLE TO DOCUMENTATION; INTELLECTUAL PROPERTY

23.1.  Representations. Subcontractor represents and warrants that:

23.1.1.   None of the Work or the Documentation, when delivered to Contractor, infringes or constitutes a misappropriation of any right of any third party, including any copyrights, mask work rights, patent rights, trademark rights, trade secret rights, confidentiality rights or other property rights and

23.1.2.   None of the Equipment, when delivered to Contractor and that includes computer hardware or software or microchip devices or equipment, (i) contains computer viruses or other contaminants, including any code or instructions that may be used to modify, delete, render inaccessible or inoperable, or damage any part of the Equipment or Owner's data files or other programs; or (ii) has embedded in them any back door, time bomb, Trojan horse, drop dead device or other computer software routine that is designed to permit (or that permits) access to or use of any of the Equipment or Contractor's other assets by any Person other than Contractor or that is designed to permit (or that permits) the disabling or erasure of any software or data.

23.2.  Ownership of Rights in Documentation. All Documentation, including copies thereof, and other documents including those in electronic form, prepared by the Subcontractor or supplied by the Subcontractor in the course of providing the Work for the Project, shall become the property of Contractor, and the Contractor shall own all intellectual property rights, including common law, statutory and other reserved rights and copyright. Subcontractor agrees to, and hereby does, assign to Contractor, without any further consideration, all rights, title and interests throughout the world in and to all such Documentation immediately upon their creation. Subcontractor agrees that all such Documentation that are copyrightable shall constitute "works made for hire" under the copyright laws of the United States and, as such, acknowledges that Contractor is the author of such Documentation and owns all of the rights comprised in the copyright of such Documentation and Subcontractor hereby assigns, and agrees to cause each other Person having any rights therein to assign, to Contractor, without any further consideration, all of the rights comprised in the copyright and other proprietary rights that Subcontractor or such other Person may have in any such Documentation upon its creation to the extent that it might not be considered a work made for hire. Subcontractor agrees to perform, or cause to be performed, at its expense, all acts reasonably deemed necessary or desirable by Contractor to effectuate the intent of this Section. All such documents and items shall be delivered by Subcontractor to Contractor upon Substantial Completion or such earlier date as directed by Contractor due to termination or suspension or as necessary for Project operations. Subcontractor may retain copies of such documents and items as permitted under this Agreement and/or any other agreement between the Parties, solely for the purpose of performing such duties required thereunder. The ownership

STRATA-0089102

of such intellectual property rights, including common law, statutory and other reserved rights and copyright shall pass to the Owner when and as required by the Prime Contract.

23.3.  <u>Marking of Documentation.</u> Subcontractor shall not mark any Documentation as confidential or proprietary to Subcontractor, and, if any such Documentation contain any such markings, they shall be deemed null and void, without force or effect, and Contractor shall be entitled, without notice to Subcontractor, to remove any such markings.

23.4.  <u>Other Licenses.</u> If, notwithstanding the foregoing, a license is required under any patent, trade secret right or other proprietary right of Subcontractor or any sub-subcontractor to maintain, operate, conduct training for, modify, repair, or decommission the Facility or comply with applicable Laws, Subcontractor hereby grants to Contractor and Owner a non-transferable (except only as part of the sale or transfer of the Facility), royalty-free, fully paid up, irrevocable, sub-licensable, nonexclusive license under such patent, trade secret and other proprietary right for such purposes.

# 24.  CONFIDENTIALITY

24.1.  <u>Confidentiality Obligations.</u> Each Party agrees: (a) to treat the other Party's Confidential Information as confidential and to take reasonable precautions to prevent unauthorized disclosure or use of the other Party's Confidential Information, such precautions taken being at least as great as the precautions taken by such Party to protect its own Confidential Information (but in no case less than reasonable care); (b) not to disclose the other Party's Confidential Information to any third party other than as provided in Section 24.2 or with the other Party's prior written authorization; and (c) not to use the other Party's Confidential Information except for performance of this Agreement, compliance with applicable Laws, or construction, design, engineering, commissioning, testing, maintenance, operation, training, modification, repair or decommissioning of, or consultation regarding, the Facility.

24.2.  <u>Permitted Disclosures.</u> A Party may disclose the other Party's Confidential Information to third parties as follows:

24.2.1.  A Party may disclose the other Party's Confidential Information to any Government Authority if required to do so, in which case the Party from whom such disclosure is required shall (a) give the other Party all reasonably possible notice so as to facilitate such other Party being able, should it so desire, to seek a protective order or similar protection, and (b) fully cooperate with the other Party's efforts, at the other Party's expense, to obtain such protection.

24.2.2.  Subcontractor may disclose Contractor's or Owner's Confidential Information to a sub-subcontractor only if (a) such disclosure is necessary for sub-subcontractor's performance of the Work; (b) the sub-subcontract pursuant to which such sub-subcontractor performs the Work contains obligations substantially similar to those set forth in this Article 24; and (c) Subcontractor's surety as part of underwriting analysis and/or if needed as part of a claim or potential claim investigations to the extent that production of such information is required and/or necessary.

24.2.3.  Contractor and Owner may disclose Subcontractor's Confidential Information to (a) potential investors; (b) third parties engaged by Contractor or Owner to provide consultation regarding the Facility; (e) third parties with which Contractor or Owner contracts for engineering, construction, designing, commissioning, testing, maintenance, operation, training, modification, repair, consultation or decommissioning of the Facility or other activities relating to the Facility undertaken in order to comply with applicable Law; (d) purchasers and prospective purchasers of the Facility; or (e) notwithstanding Section 24.2.1, request of any Government Authority having jurisdiction over the Facility, Owner, or Contractor in respect to any aspect of the Facility, provided that, in the case of clauses (a) – (e), the third party to which disclosure is made first executes a written confidentiality agreement with Contractor or Owner containing confidentiality obligations substantially similar to those set forth in this Article 24.

24.3.  <u>Publicity.</u> Unless required for performance of the Work, Subcontractor shall not videotape, photograph or otherwise record the Site or the Work. Any permitted videotape, photograph or recording at the Site or of the Work shall be considered Confidential Information. Subcontractor shall not make any announcement, give any photographs or release any information concerning all or a portion of the Work, this Agreement or the Project to any member of the public, press, Person, or any official body, without the express prior written consent of Contractor's marketing department at marketing@stratacleanenergy.com. Further, Subcontractor agrees not to publish, release, disclose or disseminate to anyone other than Contractor, whether in writing or orally, the results of any Work performed or any information obtained as a result of the Work, without the express prior written consent of Contractor. Additionally, Subcontractor agrees to cooperate with Contractor in maintaining good community relations. The Contractor or Owner will issue all public statements, press releases and similar publicity concerning the Project, including its progress, completion and characteristics. Subcontractor shall not make or assist anyone (other than Owner (through Contractor)) to make any such statements, releases, photographs, or publicity without the prior written approval of Contractor's marketing department at marketing@stratacleanenergy.com.

STRATA-0089103

24.4.  Contractor and Owner Trademarks. Subcontractor shall not use Contractor's nor Owner's respective name, logos, trademarks, service marks, trade names or trade secrets in any way without Contractor's prior written consent, and Contractor shall not be deemed to have granted Subcontractor a license of, or any rights in, any of the foregoing by entering into this Agreement.

## 25.  PROJECT DOCUMENTATION

25.1.  Technical Documentation. Except to the extent applicable Laws require a longer retention, Subcontractors shall maintain and shall use reasonable efforts to cause all sub-subcontractors and vendors to maintain all technical documentation and procurement records relative to the Equipment for a period of seven (7) years after completion of Subcontractor's Work. During such period, Subcontractor shall give Contractor one hundred twenty (120) Days prior written notice before destroying or disposing of any such documentation or records and a reasonable opportunity for Contractor during such period to make copies of any such documentation.

25.2.  Accounting Records. Except to the extent applicable Laws require a longer retention, Subcontractor shall maintain and shall use reasonable efforts to cause all sub-subcontractors and vendors to maintain complete accounting records relating to all Work and the cost of all Work performed or provided under this Agreement (which records shall include an estimate of installed costs per component in accordance with FERC accounting requirements) on a time and material basis in accordance with generally accepted accounting principles in the United States, as set forth in pronouncements of the Financial Accounting Standards Board (and its predecessors) and the American Institute of Certified Public Accountants, for a period of seven (7) years after the completion of Subcontractor's Work, except that records relating to Sales Taxes for such items must be retained for ten (10) years as specified in Section 26.3. During such period, Subcontractor shall give Owner sixty (60) Days prior written notice before destroying or disposing of any such accounting records and a reasonable opportunity for Contractor during such period to make copies of any such documentation.

25.3.  Sales Tax Records. Except to the extent applicable Laws require a longer retention, Subcontractor shall retain, and shall use reasonable efforts to cause all sub-subcontractors and vendors to retain, all documentation relating to purchases and the related payment of Sales Taxes, if any, for a period of not less than ten (10) years after completion of Subcontractor's Work.

## 26.  AUDIT

26.1.  Contractor's Right to Conduct Financial Audits. For a period of seven (7) years following the completion of Subcontractor's Work, for purposes of : (a) verification of incurred or estimated costs, including all related direct costs, claimed by Subcontractor for any Work performed on a time and material basis, any suspended, terminated, delayed or accelerated Work, or for any claim whatsoever for additional costs outside the Subcontract Price (including Sales Taxes), or (b) regulatory requirements or required disclosures to Government Authorities, Owner or its authorized representative shall have the right, and free access at any reasonable time during normal business hours, to examine, audit and copy Subcontractor's records and books related to all those costs as reasonably necessary for Contractor to verify such costs.  As part of any such audit, Subcontractor shall provide data in the appropriate electronic native file format (i.e., Microsoft Word, Excel, Primavera, etc.) such that the data may be effectively sorted, summed, and evaluated.  However, Contractor or Contractor's representative shall have no right to audit records or books concerning the make-up of any agreed upon lump sum amounts or fixed rates or multipliers.  If any audit by the auditor reveals charges or costs charged to or paid by Contractor as costs or fees which are not proper or exceed the rates or amounts permitted hereunder for any such matters, then Contractor shall be entitled upon demand for a refund from Subcontractor of all such amounts, plus interest thereon from the date of payment by Contractor until the date of refund by Subcontractor at a rate of the lesser of (i) the annual rate of interest equal to the prime rate (as published in the Wall Street Journal) plus two hundred basis points (2%) per annum or (ii) the maximum rate allowed by applicable law.

26.2.  Right to Conduct Environmental Audits. Owner and Contractor shall have the right to conduct an environmental review of any of Subcontractor's facilities at the Site or related to the Work at any time to verify compliance with applicable Environmental Laws and this Agreement. Subcontractor shall perform periodic self-assessments to ensure compliance with applicable Environmental Laws. Subcontractor shall cooperate with Contractor's and Owner's environmental reporting and self-assessment and shall, as a part of the Work, comply with and prepare all necessary documentation as required therein. Subcontractor shall provide Contractor with original environmental reports or records relating to the Work or the Site within three (3) Days of creation or receipt.

26.3.  Right to Conduct OSHA Audits. To the extent permitted by applicable Law, Contractor and Owner shall have the right to review and copy all of Subcontractor's documents that relate to safety and health at the Site, including Subcontractor's safety and health programs, safety and health training records, OSHA recordkeeping forms (such as 101, 200, 300 and 301), any incident report or first report of injuries form and any industrial hygiene monitoring test results.

STRATA-0089104

## 27. DISPUTES

27.1.  <u>Negotiation</u>. For any dispute related to or arising out of this Agreement, the Parties shall endeavor to reach resolution through good faith direct discussions between the Parties' representatives possessing the necessary authority to resolve such matter. If the Parties' representatives are unable to resolve the matter within five (5) Business Days from the date of first discussion, the Parties' representatives shall inform the appropriate senior executives of the Parties that the matter was not resolved. The appropriate senior executives of the Parties shall then meet for further discussion, such meeting to be within twenty (20) Business Days from the date of first discussion, to attempt to reach a resolution.

27.2.  <u>Binding Dispute Resolution</u>. Except as may be necessary to preserve any rights or the status quo, the Parties agree to exhaust the negotiation and mediation process set forth herein before resorting to litigation or arbitration. If the dispute is not resolved through negotiation or mediation, then either Party may pursue any rights or remedies available at law or in equity through litigation or, if and as agreed to by both Parties in writing, arbitration. Both Parties agree that any discussions and negotiations related to any proposed settlement of any dispute may not be introduced into evidence by either party in any judicial action or arbitration forum used to resolve such dispute. An award entered in an arbitration proceeding pursuant to this Agreement shall be final and binding upon the Parties, and judgment may be entered upon an award in any court having jurisdiction.

27.3.  <u>Venue</u>. Except for any judicial action or proceedings required by the Laws and Codes of the Commonwealth of Virginia to be brought in any state or federal court in the Commonwealth of Virginia, all judicial actions or proceedings brought against any Party with respect to this Agreement shall be brought in any state or federal court of competent jurisdiction in the Commonwealth of Virginia provided, however, that if a federal court in the Eastern District of the Commonwealth of Virginia has and accepts jurisdiction over the matter at issue, the judicial action or proceeding shall be brought in such federal court, and by its execution and delivery of this Agreement, each Party accepts, generally and unconditionally, the exclusive jurisdiction of the aforesaid state and federal courts. Each Party irrevocably waives any objection (including any objection based upon the grounds of "*forum non conveniens*") that it now or hereafter may have to the bringing or prosecution of any such action or proceeding with respect to this Contract or the documents and instruments contemplated hereby in the Commonwealth of Virginia. Each Party hereby irrevocably consents to the service of any and all process in any action or proceeding by mailing a copy of such process to such Party at the address for such Party set forth in Article 28 below (Notices).

27.4.  <u>Consolidation</u>. No litigation arising under this Agreement shall include, by consolidation, joinder, or any other manner, any Person not a party to this Agreement unless (a) such Person is substantially involved in a common question of fact or law, (b) the presence of the Person is required if complete relief is to be accorded in the litigation, and (c) the Person has consented to be included. Notwithstanding the foregoing, Contractor, in its discretion, shall have the option at any time to consolidate any litigation or Dispute arising hereunder with any existing litigation, arbitration or other similar matter which involves Contractor and any Person providing services to Contractor in connection with the Project or Facility, and Subcontractor hereby consents to any such joinder or consolidation.

27.5.  <u>Attorney's Fees.</u> The prevailing Party in any dispute arising pursuant to this Agreement shall be entitled to an additional award of its reasonable attorneys' fees and other expenses incurred in asserting or defending the dispute.

27.6.  <u>Continuation of Work</u>. Pending the final resolution of any dispute arising out of or related to this Agreement, Subcontractor shall proceed diligently with the Work and all other duties and obligations of this Agreement.

27.7.  <u>Alteration of Dispute Resolution Procedures</u>. The Parties may agree to alter the time periods set forth for disputes as the circumstances of a specific dispute dictate. Likewise, the dispute resolution procedures, including but not limited to timing, venue, and method of binding dispute resolution, may be altered by Contractor as necessary to allow Contractor to promptly comply with the requirements of the dispute resolution procedures set forth in the Prime Contract. Upon Contractor's request, Subcontractor agrees to stay a dispute resolution proceeding under this Article pending the conclusion of any Prime Contract dispute proceeding involving, or relating to, Subcontractor's Work or involving facts that may impact any pending dispute between Contractor and Subcontractor. Subcontractor shall be bound by the results of any dispute between Contractor and Owner pursuant to the Prime Contract to the extent such result relates to Subcontractor's Work or any dispute between Contractor and Subcontractor.

27.8.  <u>Third Party Disputes</u>. If Contractor is required to litigate or arbitrate any dispute relating to the Project with a third party, Subcontractor agrees to provide to Contractor such reasonable assistance in connection with such dispute as Contractor may request. As reasonably requested by Contractor, Subcontractor agrees to provide documentary and oral evidence relating to such dispute and Contractor shall reimburse Subcontractor for the reasonable and appropriately documented costs and expenses incurred by Subcontractor in providing such assistance, unless Subcontractor's Work or other actions are alleged to be a source of liability in such dispute.

## 28. NOTICES

Any notice or other document (other than invoices) or communication which is required to be given by either party under this Agreement shall be given in writing and shall be deemed to have been duly given if: (a) delivered by hand (effective upon actual hand delivery); (b) sent by an internationally recognized courier service for delivery within two (2) Business Days (effective two (2) Business Days after deposit with such courier service); (c) mailed by registered or certified mail, return receipt requested, postage prepaid (effective four (4) Days after deposit with the mail service) or (d) sent by confirmed fax or email (with a simultaneous confirmation copy sent in accordance with (b) or (c)), to the other party's address as set forth herein (effective upon receipt of confirmation that the fax or email was successfully sent to the intended recipient(s)). Notices related to this Agreement should be sent to the following:

> To Contractor:
> Nicholas Mshar
> Sr. Vice President of Field Operations
> Strata Solar, LLC
> 800 Taylor Street, Suite 200
> Durham, NC, 27701
> Office: 919.960.6015 ext 495
> nmshar@stratacleanenergy.com
>
> with copy to:
> Brian Herndon
> General Counsel
> Strata Solar, LLC
> 800 Taylor Street, Suite 200
> Durham, NC, 27701
> Office: 919-960-6015 ext. 211
> bherndon@stratacleanenergy.com
>
> To Subcontractor:
> Jason Tindol
> Tindol Construction
> 335 Viggo Rd
> Beevile, TX 78102
> Office: 361-621-1530
> jtindol@tindolconstruction.com

The Parties may each change the address to which notices and other communications hereunder are to be delivered by giving the other Party written notice in the manner provided in this Agreement.

## 29. CONFLICT OF INTEREST

Subcontractor represents and warrants that it has given no, and covenants that it will not give any, commissions, payments, kickbacks or lavish or extensive entertainment or gifts to any employee or agent of Contractor. Other than reasonable meal expenses during legitimate business meetings (not to exceed approximately $25 per person), Subcontractor shall not give any gift or other thing of value to any employee or agent of Contractor without providing prior notice of such gift to an officer of Contractor.

## 30. MISCELLANEOUS

30.1. <u>Assignment.</u> Subcontractor shall not assign this Agreement without Contractor's written consent. Contractor shall have an unrestricted right to assign this Agreement and all benefits, interests, rights and causes of action arising under it to Owner, an Affiliate of Owner, an operator of the Facility or as may otherwise be required by the Prime Contract, for no additional consideration due to Subcontractor and effective upon written notice to the Subcontractor.

30.2. <u>Third Party Beneficiary.</u> Subcontractor acknowledges and agrees that Owner is an intended and express third party beneficiary of all provisions of the Agreement and shall have the right to enforce the terms of the Agreement, in Owner's sole discretion.

30.3. <u>Waiver.</u> Notwithstanding any course of dealing or custom of the trade, any Party's waiver or failure to enforce any of the terms, conditions, or provisions of this Agreement at any time shall not in any way affect, limit, or modify the Party's right thereafter to enforce or compel strict compliance with the terms, conditions, or provisions of this Agreement. Any waiver must be in writing and signed by both Parties.

STRATA-0089106

DocuSign Envelope ID: 96B5E0533-06DD-4AA4-8409-D256682147B4

30.4.  Cumulative Remedies. All remedies set forth herein will be cumulative and additional to any other or further remedies provided in law or equity, unless specifically stated otherwise.

30.5.  Successors. This Agreement is binding upon, inures to the benefit of and is enforceable by the Parties and their respective successors and assigns.

30.6.  Survival. The provisions of this Agreement, which by their nature are intended to survive the termination, cancellation, completion, or expiration of the Agreement, including but not limited to any indemnities or any expressed limitations of or releases from liability, shall continue as valid and enforceable obligations of the Parties notwithstanding any such termination, cancellation, completion or expiration.

30.7.  Severability. If any part of this Agreement is void or voidable, then that part is severed from this Agreement without affecting the continued operation of the remainder of this Agreement.

30.8.  Joint Drafting. Both parties had opportunity to negotiate terms and to seek counsel prior to signature; no rule of interpretation should favor either party.

30.9.  Vienna Convention. The Parties hereby expressly agree to exclude and disclaim the application of the provisions of the United Nations Convention on Contracts for the International Sale of Goods (also referred to as the Vienna Convention), and any successor convention or legislation, to this Agreement.

30.10. Further Assurances. Subcontractor agrees to execute and deliver all further instruments and documents, and take all further action, as may be reasonably necessary, proper or advisable to complete performance by the Subcontractor hereunder and to effectuate the purposes and intent of this Agreement. In particular, Subcontractor shall cooperate with and provide reasonable assistance to Contractor and its insurers, lenders, contractors, consultants, accountants, attorneys, representatives and agents, in relation to their due diligence, financial, technical, scientific, engineering, accounting, environmental studies, monitoring, inspections, audits, and the creation and administration of milestone and completion tests that shall test the physical, mechanical, legal, reliability, financial, regulatory and other relevant aspects of completion of the Work.

30.11. Counterparts. This Agreement may be executed by the Parties in multiple counterparts and shall be effective as of the Effective Date when each Party shall have executed and delivered a counterpart hereof, whether or not the same counterpart is executed and delivered by each Party. When so executed and delivered, each such counterpart shall be deemed an original and all such counterparts shall be deemed one and the same document. Electronic signature shall be deemed to be, and shall have the same effect as, execution by original signature. Transmission of images of signed signature pages by facsimile, e-mail or other electronic means shall have the same effect as the delivery of manually signed documents in person.

30.12. Non-Solicitation. Each Party, during the term of this Agreement and continuing for the eighteen (18) month period following the termination or expiration of this Agreement, shall not, and shall cause its affiliates not to, induce any director, manager, officer or full-time employee of the other Party or any of its affiliates ("Protected Team Member") to leave the employment or service of such Party or any of its affiliates; provided however, nothing herein shall prohibit either Party from hiring any Protected Team Member who responds to a general advertisement or solicitation not specifically directed at the Protected Team Members of the other party or any of its affiliates, provided further, however, that the preceding proviso shall not apply to any Protected Team Member (i) substantively involved with the other Party in the discussions concerning, or the evaluation or diligence of, the Proposed Relationship or (ii) who otherwise has more than a de minimis contact with the other Party in connection with any resultant relationship between the Parties or their affiliates.  If any court should construe the restrictions set forth in this Section to be too broad to permit enforcement to its fullest extent, then such restriction shall be enforced to the maximum extent that such court finds reasonable and enforceable.

# 31. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement between the Contractor and the Subcontractor as to its subject matter and supersedes any prior understanding or agreement between the Parties.

STRATA-0089107

**IN WITNESS WHEREOF,** the undersigned represent and warrant that they are authorized as representatives of the Party on whose behalf they are signing this Agreement and to bind their respective Party thereto as of the Effective Date of this Agreement.

**STRATA SOLAR, LLC**

By: _Markus Wilhelm_

Name: Markus Wilhelm

Title: Chief Executive Officer

Date: 11/2/2021

**TINDOL CONSTRUCTION**

By: _Jason Tindol_

Name: JASON Tindol

Title: President

Date: 10/29/21